IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| IN RE NICHOLS BROTHERS, | ) | Case No. 18-11123-M |
| INC., et al.,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

MOTION TO SETTLE AND COMPROMISE
CLAIMS BY AND AGAINST THE RAILROAD COMMISSION OF
TEXAS AND NOTICE OF OPPORTUNITY FOR HEARING

W.O. Operating Company, Ltd. ("Debtor"), by and through counsel, hereby requests that the Court approve a compromise and settlement with the Railroad Commission of Texas ("TRRC"). As support therefore, the Debtor will show the Court the following:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 11 U.S.C. § 157(b)(2)(A) and (B).

**Background**

2. On June 1, 2018, the Debtor commenced a voluntary petition under Chapter 11 of the United States Bankruptcy Code. The Debtor's case was administratively consolidated under Case No. 19-11123-M of Nichols Brothers, Inc. Prior to filing, the Debtor was part of a diversified conglomerate focusing primarily on oil and gas investment and operations. The Debtor's principal assets are located in the panhandle of Texas and comprise of approximately 73 oil and gas leases

---

[1] The Debtors in these jointly administered cases are: NICHOLS BROTHERS, INC., Case No. 18-11123-TLM; NBI PROPERTIES, INC., Case No. 18-11124-M; NBI SERVICES, INC., Case No. 18-11125-M; LADDER COMPANIES, INC., Case No. 18-11126-M; RED WATER RESOURCES, INC., Case No. 18-11127-M; CANO PETRO OF NEW MEXICO, INC., Case No. 18-11128-M; and W.O. OPERATING COMPANY, LTD., Case No. 18-11129-M.

with approximately 900 wells located thereon. The Debtor has not operated for some time based, in part, upon severance orders issued by the TRRC.

3. Upon filing, the TRRC took various actions in the Debtor's case, including but not limited to filing a motion to convert the Debtor's Chapter 11 case to one under Chapter 7, seeking to transfer the Debtor's case to the Northern District of Texas, and commencing an adversary action [Adv. No. 18-1041-M] asserting certain claims and relief against the Debtor. In the adversary complaint, the TRRC is seeking, among other things, to establish claims against the Debtor.

4. The Debtor has vigorously defended against the actions of the TRRC, including filing a motion to dismiss the adversary complaint, which is presently pending before the Court. The adversary case raises novel and difficult issues concerning the claims brought by the TRRC against the Debtor.

5. On October 19, 2018, the Debtor and entered into an asset purchase agreement ("APA"), as amended, with SB Energy 1, LLC ("SB Energy"), seeking to sell substantially all of its assets, including the 73 oil and gas leases and associated wells located thereon. The Debtor is seeking approval of this proposed sale by a motion filed concurrently with this motion.

6. As part of the sale, both the Debtor and representatives of SB Energy negotiated with the TRRC concerning regulatory approval of the sale. As part of these negotiations, the Debtor and TRRC settled and resolved all claims against the other.

**Settlement Terms**

7. The terms and conditions to which the Debtor and TRRC have agreed to fully settle and compromise all claims as between the parties, and which approval is being sought by the Court, are set forth in the Term Sheet attached as Exhibit "A." The material terms of the settlement and compromise are as follows:

  (1)  The TRRC will have an allowed general unsecured claim against the Debtor's estate in the amount of $10,208.35 for all pre-petition obligations owed to the TRRC that are not in the nature of fines and penalties;

  (2)  The TRRC will have an allowed unsecured claim against the Debtor's estate in the amount of $4,130,392 for all pre-petition fines and penalties owed to the TRRC, which the TRRC will agree to subordinate pursuant to the policy rationale of 11 U.S.C. § 726(a)(4);

  (3)  Within five days of the closing of the APA, the TRRC will dismiss the following with prejudice with each party to bear their own costs and expenses, including attorneys' fees:

    (a)  Motion to convert the Debtor's individual Chapter 11 case to one under Chapter 7 [Docket No. 124];

    (b)  Motion to transfer the Debtor's individual case to the Northern District of Texas [Docket No. 137]; and

    (c)  Adversary Proceeding No. 18-1041-M filed against the Debtor by the TRRC;

  (4)  Other terms as provided in the Agreement, including but not limited to this motion being heard and approved concurrently with the Debtor's motion to sell substantially all its assets to SB Energy.

### Discussion

8.  Federal Rule of Bankruptcy Procedure 9019 authorizes courts to approve settlements that affect the bankruptcy estate. The approval or rejection of a settlement is left to the sound discretion of the court and is determined by the particular facts and circumstances of the proposed settlement. The phrase "sound discretion" denotes the absence of any hard and fast rule; indeed, it contemplates a decision giving due regard to what is right and equitable under the particular circumstances and applicable law. *See generally Protective Committee for Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

9.  Courts have adopted the following criteria to determine the acceptability of a proposed settlement under Bankruptcy Rule 9019:

    (1)    The balance between the likelihood of success compared to the present and future benefits offered by settlement;

    (2)    The prospect of complex and protracted litigation if settlement is not approved;

    (3)    The expense, inconvenience, and delay necessary in attending the litigation (including the possibility that denial of settlement will cause depletion of assets);

    (4)    The competency and experience of counsel who support settlement;

    (5)    Other factors relevant to a full and fair assessment of the wisdom of the proposed settlement;

    (6)    The extent to which settlement is the product of arms' length negotiation; and

    (7)    The paramount consideration of creditors and other parties-in-interest, which requires whether the proposed settlement falls below the lowest point in a range of reasonableness.

*See generally American Employers' Ins. Co. v. King Resources Co.*, 556 F.2d 471 (10th Cir. 1977); *see also In re Kopexa Realty Venture Co.,* 213 B.R. 1020 (10th Cir. BAP 1997). The Debtor respectfully submits that the above-referenced settlement and compromise is fair and equitable and in the best interest of Debtor, its creditors, and parties-in-interest.

    10.    The Debtor submits that the terms of the proposed settlement meet the requirements established for Rule 9019. The settlement will avoid costly and protracted litigation and will free funds to pay expenses and creditors.

## **NOTICE OF OPPORTUNITY FOR HEARING**

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court

for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 24 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection on the undersigned movants' attorneys, and any party who is required to be served under applicable law, and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. **The 24-day period includes the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f).**

WHEREFORE, the Debtor requests that the Court approve the above-referenced settlement between the parties pursuant to Federal Rule of Bankruptcy Procedure 9019, and any other relief that the Court deems reasonable and just under the facts of this bankruptcy case.

Respectfully submitted,

*/s/ Chad J. Kutmas*
Gary M. McDonald, OBA No. 5960
Chad J. Kutmas, OBA No. 19505
Mary E. Kindelt, OBA No. 21728
MCDONALD & METCAL, LLP
First Place Tower
15 E. Fifth Street, Suite 1400
Tulsa, OK 74103
(918) 430-3700
(918) 430-3770 (Fax)

*Attorneys for the Debtor*

# EXHIBIT "A"

*Execution Version*

— *Matter of Nichols Brothers, Inc, et al.* —
SETTLEMENT AGREEMENT TERM SHEET

This Term Sheet is being entered into between W.O. Operating Company, Ltd. ("W.O. Operating"), SB Energy 1, LLC, or its assignee ("Buyer"), and the Railroad Commission of Texas ("Commission" and collectively with W.O. Operating and the Buyer, the "Parties").

This Term Sheet summarizes the principal terms and material conditions of a proposed settlement of the claims and disputes currently pending between W.O. Operating and the Commission in connection with W.O. Operating's Chapter 11 bankruptcy case, which is being jointly administered in the United States Bankruptcy Court for the Northern District of Oklahoma (the "Court") under the caption of In re Nichols Brothers, Inc., et al., No. 18-11123-M ("Chapter 11 Case"). In connection with the Chapter 11 Case, W.O. Operating is seeking to sell substantially all of its assets to Buyer. This Term Sheet also summarizes the principal terms and conditions required of Buyer to operate those assets. Buyer will establish a new Commission-approved operator, Large Operating, LLC, (the "Operator") in connection with its agreements with the Commission.

This Term Sheet is provided to memorialize the settlements and/or agreements reached between the Parties on October 19, 2018, with subsequent negotiations. Execution of this Term Sheet shall be binding on the Parties subject to approval 1) by the Court pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") and 2) by the Commissioners of the Commission, as more fully discussed below.

### I. Agreements Between W.O. Operating and Buyer

1.1  W.O. Operating will file a motion seeking to sell substantially all its assets under the terms of the Asset Purchase Agreement dated October 19, 2018, as amended (hereinafter, "APA") pursuant to § 363 of the Bankruptcy Code (hereinafter, the "§ 363 Motion").

### II. Agreements Between Buyer and the Commission

2.1  As part of the purchase, and as a condition of the Commission's approval of the same, Buyer and Commission will take the following action prior to the closing of the sale under the APA:

   a. Operator will obtain financial assurance to secure a Form P-5 Organization Report ("Form P-5") in the amount of $250,000 pursuant to 16 Texas Administrative Code § 3.78.

   b. Richard Sands will be listed as an officer or director on the Operator's Form P-5 on file with the Commission, unless and until the Commission consents in writing to any changes to the Form P-5.

   c. Buyer or Operator shall submit a dual-signature form P-4 Producer's Transportation Authority and Certificate of Compliance ("Form P-4")

    transfer of operator form for each of the 73 leases (the "Leases") being sold by W.O. Operating to Buyer under the APA in the name of the Operator. Buyer or Operator shall submit the P-4 Transfer packets at least five days before the closing of the sale under the APA.

d. Given the unique facts and circumstances in this case, as part of the dual signature P-4 transfer packets, the Commission shall accept the Operator's affidavit as evidence of a "good-faith claim" to title, a copy of the proposed affidavit language is attached as Exhibit A. The Commission is not challenging the validity of the Leases. In the event that some third-party with standing desires to contest the "good-faith claim" to title, the Commission shall open a docket to be presided over by an Administrative Law Judge with the Commission's Hearings Division and the Operator will be required to supplement the evidence beyond the above-referenced affidavit to prove a good-faith claim to operate the Leases.

e. Buyer/Operator agrees that it shall not submit a Form P-4 to change the operatorfor any of the Leases for a period of 18 months after the closing date of the APA ("Closing").

f. Buyer and/or Operator must comply with all rules and regulations of the Commission. Buyer and/or Operator will remedy any existing severance issues within all applicable time periods as may be extended in writing by the Commission. The Commission will provide extensions with respect to any H-15 severance issues upon the approval of a reasonable submitted plan which identifies the course of action the Operator will take to bring the wells into compliance regarding any H-15 severance issues (the "Work Plan"). The Operator may seek subsequent extensions of the compliance deadlines upon a showing of the progress made under the previously approved Work Plan, such extensions not to be unreasonably withheld. A failure to timely request the extension, via email or in writing, shall result in severance fees for all outstanding wells not in compliance. Buyer and/or Operator will have six months following Closing to comply with W3-C surface requirements. As a material condition to this paragraph, the boiler-plate language attached in Exhibit B shall be included in any sale order.

g. The Commission will not assert the penalties addressed in Section III, 3.1(a)-(b) ("Pre-Closing Claims") against Operator. Those penalties represent the outstanding balance of the penalties assessed against W.O. Operating for false-filing violations and estimated penalties under 16 Texas Administrative Code sec. 3.14(b)(2) for failure to plug inactive wells. The Buyer/Operator acknowledges that, notwithstanding this provision, it must comply with all applicable rules, regulations, and statutes after Closing, including, but not limited to, fines or penalties assessed after Closing.

  h. As a condition to Closing, Buyer/Operator will obtain a Commission-approved bond or letter of credit (the "<u>Additional Financial Assurance</u>"), in the amount of $2,000,000 consistent with Rule 3.15(f)(2)(B)(iii); however, this Additional Financial Assurance cannot be a cash deposit. Absent written consent of the Commission, the Operator shall maintain the Additional Financial Assurance in place for two years following the Closing. After the two-year period, Buyer/Operator shall be able to remove the Additional Financial Assurance absent Commission consent so long as Buyer/Operator satisfies the applicable rules and regulations that do not require the Additional Financial Assurance. The Operator may continue the plugging extension for all inactive wells so long as the Additional Financial Assurance remains in force and effect and the Operator remains in compliance with applicable laws and regulations; the Parties acknowledge that the effectiveness of this Term Sheet is conditioned upon Buyer/Operator obtaining a Form P-5, obtaining $250,000 in financial assurance, transferring the 73 dual signature Form P-4 transfers, and maintaining the Additional Financial Assurance as set forth herein.

 2.2 This agreement will be incorporated into a separate Agreed Order among Buyer, the Operator, and the Commission to be submitted for Commissioner approval at a regularly scheduled Open Meeting.

   **III.** <u>**Agreements Between W.O. Operating and the Commission**</u>

 3.1 In the event that W.O. Operating files the § 363 Motion and Buyer meets each of the obligations required by the Commission under this Term Sheet, W.O. Operating and the Commission will settle and resolve all disputes between them as follows:

  a. The Commission will have an allowed general unsecured claim in the amount of $10,208.35 for all pre-petition obligations owed to the Commission that are not in the nature of fines and penalties;

  b. The Commission will have an allowed unsecured claim in the amount of $4,130,392 for all pre-petition fines and penalties owed to the Commission, which the Commission will agree to subordinate pursuant to the policy rationale of § 726(a)(4) of the Bankruptcy Code;

  c. Within five days of the closing of the APA, the Commission will dismiss the following with prejudice with each party to bear their own costs and expenses, including attorneys' fees:

   (i). Motion to convert W.O. Operating's individual Chapter 11 case to one under Chapter 7 [Docket No. 124];

   (ii). Motion to transfer W.O. Operating's individual case to the Northern District of Texas [Docket No. 137]; and

     (iii). Adversary Proceeding No. 18-1041-M filed against W.O. Operating by the Commission.

  3.2 This agreement between W.O. Operating and the Commission will be incorporated into a Rule 9019 Motion to settle and compromise and will be subject to approval by the Court in the Chapter 11 Case. The Rule 9019 Motion would be heard on the same day as the § 363 Motion.

## Closing

The Parties shall coordinate the Closing of the APA Sale to occur at the same time as the approval of the transfer of the 73 dual-signature Form P-4s by the Commission. If Buyer/Operator does not complete any of the above-mentioned provisions, specifically: 1) obtaining a valid Form P-5 application, 2) obtaining the $250,000 Operator's Bond, 3) obtaining the $2,000,000 Additional Financial Assurance, and 4) submitting the 73 Form P-4 packets to the Commission at least five days in advance of the Closing, the Commission will notify the Parties of any deficiencies no less than 48 hours in advance of the scheduled Closing.

## Miscellaneous

Notwithstanding any other provision of this agreement, the settlement terms set forth herein shall be incorporated into a Settlement Agreement, and same will be reflected in an Agreed Order in form and substance suitable for presentation to the Commissioners of the Railroad Commission of Texas for approval. Nothing herein, or in any of the further agreements contemplated herein, shall be binding upon the Railroad Commission of Texas until the Agreed Order has been duly presented to and approved by the Commissioners.

Nothing in this agreement affects the Debtors' liabilities, if any, to the Commission with respect to the related bankruptcy cases of NBI Services, Inc. (18-11125) or Red Water Resources, Inc. (18-11127).

*Execution Version*

    IN WITNESS WHEREOF, the Parties hereto have executed this Term Sheet as of the date set forth below.

**W.O. OPERATING COMPAMY, LTD.**

By: _____
Name: Richard I. Nichols
Title: President
Date: 11/5/18

**SB ENERGY 1, LLC**

By: _____
Name: Richard Sands
Title: Authorized Representative
Date: 11/5/2018 11:14:09 AM PST

**LARGE OPERATING, LLC**

By: _____
Name: Richard Sands
Title: Authorized Representative
Date: 11/5/2018 11:14:09 AM PST

**THE RAILROAD COMMISSION OF TEXAS**

By: _____
Name: Todd Headden, Assistant Attorney General
Title: Attorney for The Railroad Commission
11/5/18

5

*Execution Version*

Exhibit A to Settlement Term Sheet
*Matter of Nichols Brothers, Inc., et al.*

Draft Affidavit to be submitted along with Railroad Commission of Texas
Form P-4 Certificate of Compliance and Transportation Authority

I, [Name], work with [Operator Name] in the capacity of [title] and am familiar with the [lease name] lease underlying this form submitted to the Railroad Commission to notify the commission of a change of operator. I certify to the Railroad Commission that as the intended operator for the above-mentioned lease, that the leaseholder, [Buyer], has a factually supported claim based upon a recognized legal theory to a continuing possessory right in a mineral estate, [including but not limited to] evidence of a currently valid oil and gas lease or a recorded deed conveying a fee interest in the mineral estate.

[Signature Block]

*Execution Version*

Exhibit B to Settlement Term Sheet
*Matter of Nichols Brothers, Inc., et al.*

Language to be included in any Sale order respecting
the leases to be sold by W.O. Operating Company.

"Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order."