## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>NICHOLS BROTHERS INC.,<br>an Oklahoma corporation, *et al.*,[1]<br><br>                 Debtors. | Chapter 11<br><br>Case No. 18-11123-M<br><br>Jointly Administered |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365
BANKRUPTCY RULES 2002, 6004, AND 6006 TO AUTHORIZE AND
APPROVE THE (I) BIDDING PROCEDURES, (II) PROCEDURES FOR
DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, (III) NOTICES RELATING TO THE SALE
OF THE DEBTOR'S ASSETS AND THE ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS, AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Nichols Brothers, Inc., NBI Properties, Inc., NBI Services, Inc., Ladder Companies, Inc., Red Water Resources, Inc., and Cano Petro Of New Mexico, Inc., as debtors-in-possession of their bankruptcy estates (collectively, the "Debtors") file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order") establishing and approving the (i) Bidding Procedures (attached as **Exhibit 1** to the Bidding Procedures Order)[2] to govern the Sale of substantially all of the Debtors' assets except for those

---

[1] The Debtors in these jointly administered cases are:  NICHOLS BROTHERS, INC., Case No. 18-11123-M; NBI PROPERTIES, INC., Case No. 18-11124-M; NBI SERVICES, INC., Case No. 18-11125-M; LADDER COMPANIES, INC., Case No. 18-11126-M; RED WATER RESOURCES, INC., Case No. 18-11127-M; CANO PETRO OF NEW MEXICO, INC., Case No. 18-11128-M; and W.O. OPERATING COMPANY, LTD., Case No. 18-11129-M.  This Motion does not seek any authority or relief for W.O. Operating Company, Ltd, which is disposing the bulk of its oil and gas properties pursuant to separate Sale Motion and Order.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order.

that may be sold through the EnergyNet auction platform (the "Assets"), (ii) proposed date and time for the sale hearing (the "Sale Hearing"), (iii) form and manner of notice of respective dates, times, deadlines (including objection deadlines) and places in connection herewith, (iv) procedures for the assumption and assignment of designated executory contracts (the "Assumption and Assignment Procedures"), and (v) granting related relief.  The Bid Procedures Order would govern the Sale by Debtors of Assets pursuant to 11 U.S.C. § 363, which will be presented by separate motion or motions ("Sale Motions") within the times projected herein.

## PRELIMINARY STATEMENT

1.      The Debtors seek to sell their assets pursuant to section 363 of the Bankruptcy Code.  The Debtors own a majority working interests in approximately 1600 oil and gas wells in New Mexico, Texas, and Oklahoma, and operate approximately 400 of those wells.  The Debtors have defaulted on payments on the original face amount of over $29 million in secured bank debt owed on Petition Date to the Pre-Petition Lenders.[3]   After unsuccessful efforts to secure refinancing or equity investment, the Debtors negotiated an agreement with the Pre-Petition Lenders and DIP Lenders (defined below) to conduct an orderly disposal of Assets through a sale and auction process through these bankruptcy cases.

2.      In order to effectuate the Sale, the Debtors have consulted counsel, its chief restructuring officer, professionals, or its staff and CrossFirst Bank as Agent for the Pre-Petition Lenders and the DIP Lenders, and their energy professionals to develop the Bidding Procedures that are attached as **Exhibit 1** to the Bidding Procedures Order.  The Sale or Sales, if more than one, ("Sales") as contemplated by the Bidding Procedures which are expected to maximize the

---

[3] The current face amount due on the Pre-Petition Debt, as shown on the Report to the Court filed September 12, 2018 [Dkt. No. 172], is $23,340,699.16 after credit for sums from Debtor since commencement of this case.

value of the Assets for the Debtors' creditors, and provide an efficient method for monetizing the Debtors' Assets for the benefit of its creditors and parties-in-interest.

## JURISDICTION, VENUE, AND PROCEDURAL BACKGROUND

3.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      On June 1, 2018 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Case").

6.      This Motion does not seek any authority or relief for W.O. Operating Company, Ltd. ("WO"), a Debtor.  WO is disposing of the bulk of its oil and gas properties pursuant to separate Sale Motion, and Order approving the same.

7.      Since the Petition Date, the Debtors have continued to operate and manage their business as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

8.      The predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9.      An official committee of unsecured creditors has been appointed in this Case as of June 22, 2018 (the "Committee").

## BACKGROUND

**A.      Corporate History**

10.      The Debtors are part of a larger group of companies ultimately owned by Richard Nichols and Orville Nichols which collectively owned or operated at times in excess of 2,000 oil and gas wells.    The Debtors' address and principal place of business is in Tulsa, Oklahoma.

**B.      The Debtors' Principal Assets and Business Operations**

11.      The Debtors own operated working interests in approximately 1,600 oil and gas wells and associated leases located in New Mexico, Texas and Oklahoma (the "Oil and Gas Interests").[4] The Oil and Gas Interests along with the well equipment, contracts, leases and related assets, excluding assets of WO, are collectively herein the "Assets" and constitute substantially all of the Debtors' assets.

12.      Under the terms of the DIP Facility, the Debtors have spent approximately $2.2 million on scheduled repairs and improvements to the wells associated with the Assets resulting in an increase in their average daily production of oil and gas from approximately 250 BOE (barrels of oil equivalent) as of the Petition Date to the present level of approximately 650 BOE.  This represents an increase in production of approximately 260%.  This substantial increase required use of approximately $2.2 million in funds drawn under the DIP Facility and approximately $.3 million from Debtors' cash flow.

13.      The Debtors are now in a position to sell the improved Assets to monetize their value by sale at a public auction and therefore file this Motion seeking approval of the Bid Procedures governing the sale of such Assets.

**C.      The Debtors' Capital Structure[5]**

14.      The Debtors are indebted to CrossFirst Bank, as a prepetition lender and administrative and collateral Agent (the "Pre-Petition Agent") for itself and three other prepetition

---

[4] The acreage is located in Beaver, Comanche, Creek, Garfield, Grady, Hughes, Kingfisher, Lincoln, Logan, Major, Nowata, Payne, Okfuskee, Pittsburg, Pontotoc, Seminole, Stephens, and Woodward counties in Oklahoma, Bowie, Brazos, Burleson, Hopkins, and Titus counties in Texas, and Chaves, Eddy, and Roosevelt counties in New Mexico.  W.O. Operating Company, Ltd., is not party to the Motion, nor are its assets to be sold pursuant to this Motion.

[5] The Debtors reserve their rights concerning the claim amounts in the capital structure set forth herein.

lenders, Valley National Bank, Kirkpatrick Bank and Arena Limited SPV, LLC, from time to time (collectively, the "Pre-Petition Lenders") pursuant to certain documents executed and delivered to Pre-Petition Lenders by the Debtors, including, without limitation, that certain Revolving Credit Agreement dated December 18, 2014 (as heretofore amended and supplemented from time to time, the "Credit Agreement").  The Credit Agreement and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, and other instruments or documents executed in connection therewith or related thereto are referred to herein collectively as the "Pre-Petition Claim Documents."

15.     Pursuant to the Pre-Petition Claim Documents and applicable law, Pre-Petition Lenders hold a valid, enforceable, and allowable claim against the Debtors, as of the Petition Date, in an aggregate principal amount equal to at least $23,340,699.16 of unpaid principal after post-petition principal credits, plus, to the extent of equity in the Assets in excess of the principal obligation, of accrued and unpaid interest,[6] accrued unreimbursed fees and expenses, plus any and all other interest, fees, costs, expenses, charges, and other claims, debts or obligations of the Debtors to Pre-Petition Lenders that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law.  Pre-Petition Lenders' claim as described in the preceding sentence together with all post-Petition Date interest, fees, costs, and charges allowed to Pre-Petition Lenders on such claim pursuant to § 506(b) are collectively referred to hereunder as the "Pre-Petition Claim".  Pursuant to the DIP Order, the Pre-Petition Claim was not challenged by the Debtor, and the Official Unsecured Creditors Committee, upon review, did not elect to challenge within the time provided for review the validity, enforceability, or perfected first lien secured claim status, subject only to the obligations under the DIP Agreement.

---

[6] Assuming equity.

16.     The Debtors failed to pay all unpaid and outstanding principal and interest due and owing on the Pre-Petition Claims by the final maturity date of October 15, 2017, and therefore were in default as of the maturity date.

17.     On March 29, 2018, CrossFirst filed suit in the United States District Court in and for the Northern District of Oklahoma in case number 18-CV-147 to enforce the Pre-Petition Claim and sought the appointment of a receiver. The Debtors ultimately filed voluntary petitions for relief on June 1, 2018, to preserve value for creditors and parties-in-interest.

18.     Under an Order entered by this Court on August 1, 2018 [Doc. 118] (the "DIP Order") Debtors obtained post-petition loans and other extensions of credit from CrossFirst Bank as administrative and collateral DIP Agent ("DIP Agent") and Arena Limited DIP II, LLC (collectively, the "DIP Lenders" and collectively with the Pre-Petition Lenders, the "Lenders"); from time to time in an amount not to exceed $3,000,000.00 on a final basis, cumulative of any amounts advanced on an interim basis (the "DIP Commitment"), and including, without limitation, principal, other extensions of credit and financial accommodations, interest, fees, expenses, and other costs of DIP Lenders in these bankruptcy cases (the "Cases"), in accordance with the terms and conditions set forth therein and in the Senior Secured Super-Priority Debtors-in-Possession Credit Agreement, or in respect of the Interim Amount, a short form note referencing this Order and the DIP Term Sheet (such note or agreement, the "DIP Agreement"),[7] the other Note Documents (as defined in the DIP Agreement), and all other related agreements and documents

---

[7] A copy of the DIP Agreement may be found at Docket No. 113 (Order Granting DIP Financing and Authorizing Cash Collateral), Ex.1, and is incorporated herein as if set forth herein. To the extent that the DIP Agreement is expanded or modified following the Interim Hearing Date (as defined below), a copy of such agreement shall be filed with the Court.

(collectively, the "DIP Facility").   As of the filing of this Motion, the balance owed on the DIP Facility is approximately $2.4 million.

19.      All of the Debtors' indebtedness and obligations to the Lenders is secured by valid liens upon the Assets, which Debtors acknowledge has been unconditionally guaranteed by Orville B. Nichols and Richard J. Nichols, individually plus the entities known as Cano Petroleum, Inc., a Delaware corporation, W.O. Energy Of Nevada, Inc., a Nevada corporation, Dalco Petroleum, Inc., an Oklahoma corporation, Grant Oil And Gas Corporation, an Oklahoma corporation, The Nichols Companies, Inc., formerly known as NOCO Investment Co., Inc., an Oklahoma corporation, The Operating Company, an Oklahoma corporation, Tulsa Energy, Inc., an Oklahoma corporation, Tulsa Petroleum Resources, Inc., an Oklahoma corporation, VP Subco, Inc., an Oklahoma corporation, Yale Avenue, Ltd., an Oklahoma corporation, Square One Energy, Inc., a Texas corporation, WO Energy, Inc., a Texas corporation, W.O. Production Company, Ltd., a Texas limited partnership, and Harvard Properties, Inc., an Oklahoma corporation (collectively, the "Guarantors") pursuant to certain agreements and documents including, without limitation, the Guaranty Agreements executed on December 18, 2014 and on or about June 30, 2016 as to Harvard, all as further set forth therein.

## D.      Events Leading to the Debtors' Bankruptcy

20.      After the default on the Pre-Petition Claims, the Debtors and the Pre-Petition Lenders began discussing and negotiating options for a potential restructuring of the Debtors' debts and/or bankruptcy filing.  These discussions ultimately resulted in the Debtors' decision to file a Chapter 11 bankruptcy petition and, consistent with the Bankruptcy Code, sell substantially all of its assets pursuant to 11 U.S.C. § 363.  An integral part of the agreement provided for the funding of the DIP Facility as a means to complete certain repairs and improvements to increase the value of the Assets.

21.     The DIP Facility originally contained certain dates and deadlines relating to a proposed sale process that coincided in part with the repairs and improvements contemplated for the Assets.   The Debtors, in consultation with the DIP Lenders and Pre-Petition Lenders, determined it is necessary to modify the existing sale process contemplated by the DIP Facility and file this Motion to approve Bidding Procedures for the sale process.   The Debtors and DIP Lenders also have established a revised budget and funding to ensure that the Debtors can operate, its estate professionals are paid, and the status quo is maintained, pending a sale of the Assets.

22.     A separate motion to approve the sale of the Assets pursuant to 11 U.S.C. § 363 will be filed expeditiously by the Debtors, as to Assets sold.

## RELIEF REQUESTED

### A.     Introduction

23.     By this Motion, the Debtors seek entry of the Bidding Procedures Order (attached as **Exhibit A**) establishing and/or authorizing the (i) Bidding Procedures for the Sale of the Assets, (ii) proposed date and time of the Sale Hearing, (iii) form and manner of notice of respective dates, times, deadlines (including objection deadlines) and places in connection herewith, (iv) Assumption and Assignment Procedures, and (v) granting related relief.

24.     The Debtors intend to file a Motion for Sale (the "Sale Motion") seeking entry of the Sale Order granting the Debtors (i) authority for and approval of the sale of the Assets pursuant to the Sale Motion under §363; (ii) approval of the assumption of executory contracts and unexpired leases under §365 as well as a determination of the cure costs associated with the assumption; and (iii) other customary related relief to be considered by this Court at the Sale Hearing.   The legal descriptions and details about the Assets will be contained in the Sale Motion.

25.     The Debtors have established a schedule within which to complete the filing of the Sale Motion, the hearing, on the Sale Motion, and the Sale Order as set forth below:

**Key Dates**

| | |
|---|---|
| Deadline to file Assumption Notice | February 22, 2019 |
| Deadline to file Sale Motion and Designate Stalking Horse (if any) | February 28, 2019 |
| Deadline to file Cure Objection | March 15, 2019 |
| Deadline for filing of Sale Objection | March 15, 2019 |
| Deadline to file Adequate Assurance Objection | March 15, 2019 |
| Bid Deadline for Competing Bids | March 21, 2019 |
| Deadline to submit Rights Notice | March 21, 2019 |
| Designation of Qualified Bidders | March 25, 2019 |
| Auction (Sale Hearing) | March 26, 2019 |

26.     In addition, the Debtors request that, at the Sale Hearing, the Court enter the Sale Order, a proposed form of which will be filed by the Debtors before the Sale Hearing, (i) authorizing the Sale of the Assets free and clear of all claims, liens, encumbrances, and other interests, (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (iii) granting related relief.

**B.      The Bidding Procedures and Sale Process**

27.     Under its agreement with the Lenders, and with their consent, the Debtors hereby seek to expeditiously sell the Assets in accordance with the Bidding Procedures and Section 363 of the Bankruptcy Code, to be initiated by a separate Sale Motion.

28.     In order to assist in the Sale, the Debtors are seeking to retain an Investment Banker, pursuant to 11 U.S.C. § 327 and procedures of this Court, as its sales agent for the Sale of the

Assets.[8]  The Investment Banker will be paid pursuant to the revised Budget and lending amounts. These services to be provided would include traditional property brokerage, prospect marketing, property valuation, and assistance with data aggregation, packaging & presentation, virtual data rooms, compiling potential buyer lists, offer solicitation, negotiations, and transaction execution. After its retention and in conjunction with the Debtors and its advisors, the Investment Banker will begin organizing and packaging the data relating to the Assets and soliciting potential purchasers of the Assets.  These efforts will supplement ongoing efforts by Debtors and will continue up until the Bid Deadline (defined below).

29.     The Debtors and the Agent agree that there are sufficient protections built into the Bidding Procedures to ensure that a meaningful and value-maximizing sale process occurs.  The material terms of the Bidding Procedures are as follows:[9]

a.     **Bid Deadline**:  Any Potential Bidder interested in the Proposed Transaction must submit a Bid prior to **March 15, 2019 at 4:00 p.m. (Tulsa Time)** (the "Bid Deadline") via email to: (1) Debtors, Attn: J. Bill Koehler, CRO, E-mail bkoehler@jbktulsa.com; (2) the Investment Banker, c/o J. Bill Koehler; and (3) McDonald & Metcalf, LLP, as counsel for the Debtors, Attn: Gary McDonald and Chad Kutmas, E-mail: gmcdonald@mmmsk.com and ckutmas@mmmsk.com; provided that if the Debtors receives a Bid prior to the Bid Deadline that is not a Qualified Bid the Debtors may provide the Bidder with the opportunity to remedy any deficiencies prior to the Auction.

b.     **Qualification as Bidder**:  In order to constitute a Qualified Bid (as defined below), any proposal, solicitation or offer for the Assets (each, a "Bid") submitted by a

---

[8] In November 2018, the Debtors formally interviewed three investment banks (collectively, the "Potential Sales Agents") for the purpose of determining who to use and how best to market and sell the Debtors' Assets.  The interviews were followed by subsequent discussions with certain of the Potential Sales Agents, in which the participants continued to describe their services and potential strategies for selling the Assets.  The Debtors will file a motion seeking to approve the retention of an Investment Banker when final selection is completed.

[9] Any summary of the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order, the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order shall control.

bidder (each, a "Bidder") must (i) be submitted in writing prior to **March 21, 2019 at 12:00 p.m. (Central Time)** (the "Bid Deadline") and (ii) satisfy the requirements set forth in the Bidding Procedures, as determined by the Debtors in its or their reasonable business judgment in consultation with the DIP Agent and Pre-Petition Agent (collectively, the "Bid Requirements"):

c.   **Due Diligence**: Subject to execution of a confidentiality agreement on terms reasonably acceptable to the Debtors (a "Confidentiality Agreement"), any party willing to submit any proposal, solicitation or offer (each, a "Bid") for the Assets (such party, a "Potential Bidder") will be granted access to public and non-public information relating to the Assets to facilitate its consideration of making its Bid, including access to the Debtor's on-line data room (the "Due Diligence Data Room"). Any confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement for the purposes of these Bidding Procedures.

d.   **Bid Requirements**: A Bid will be considered a "Qualified Bid" only if the Bid satisfies the following requirements prior to the Bid Deadline:

  i.   Qualified APA.   Bid must contain a signed definitive asset purchase agreement utilizing the approved form of APA prepared by Debtor ("Form APA") (agreement by the proposed bidder and a copy thereof that is marked to show changes from the Form APA) (a "Qualified APA") and shall:

   1.   Identify the Assets the Bidder seeks to purchase,

   2.   Contain the form of and total consideration to be paid by such Bidder, including the amount of proposed cash consideration and liabilities to be assumed, with such consideration allocated on an asset by asset basis,

   3.   Provide for the assumption of all plugging and abandonment and other obligations relating to the Assets subject to the Bid as set forth in the Form APA (the "Assumed Liabilities"),

   4.   Provide for the performance of the bonding obligations required by the Form APA relating to the Assets subject to the Bid,

   5.   Be on terms no less favorable (in the Debtor's reasonable business judgment in consultation with the DIP Agent and Pre-Petition Agent) than the Form APA, including after consideration of any Bid Protections payable thereunder, if any.

  ii.   No Contingencies.   Bid must not be subject to any: (a) financing contingency, (b) contingency relating to due diligence after the Bid Deadline, (c) contingency relating to the approval of the Bidder's board of directors or other internal approvals or non-governmental third-party

consents or approvals, or (d) any conditions precedent to the Bidder's obligation to purchase the Assets other than those included in the Form APA.

iii.     Good Faith Deposit.  A Bid must be accompanied by the provision of a certified or bank check or wire transfer in the amount of at least 10% of the purchase price proposed in the Qualified APA as a good faith deposit (the "Good Faith Deposit") as liquidated damages if the Bidder shall default with respect to its offer.  If the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender is credit bidding, the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender shall not be required to submit a Good Faith Deposit.

iv.     Commitment.  Bid must contain a written statement that the Bidder agrees to be bound by the terms of the Bidding Procedures and the Bidding Procedures Order and include a commitment that the Bidder shall (i) commence and complete all filings with respect to necessary government and other approvals within three (3) days following the entry of the Sale Order (as defined below) with respect to the relevant Assets and (ii) consummate the purchase of the relevant Assets within ten (10) days following entry of the Sale Order.

v.     Assumed Contracts and Leases. The Bid must identify, with particularity, each and every executory contract and unexpired lease the Bidder intends to assume; provided, however, that such list of contracts may be later modified to the extent permitted under the Qualified APA.

vi.     Proof of Authority and Capability. The Bid must be accompanied by evidence satisfactory to the Debtors that the Bidder is willing, authorized (including by such Bidder's board of directors or comparable governing body), capable and qualified financially, operationally, legally and otherwise, of unconditionally performing all obligations under the Qualified APA, including, without limitation, (1) all Assumed Liabilities with respect to the relevant Assets, and (2) the ability to provide adequate assurance of future performance under contracts and leases to be assumed pursuant to Section 365 of the Bankruptcy Code.  [The Bid will also contain written evidence of a firm commitment for financing or other evidence of ability to consummate the proposed transaction without financing,] provided, however, that the Debtors will determine in their business judgment and in consultation with the DIP Agent and Pre-Petition Agent whether the written evidence of such financial wherewithal is acceptable; provided further that such evidence need not be provided by the DIP Agent or Pre-Petition Agent if their respective entire Bid is a credit bid.

vii.     Backup Successful Bidder.   Bid must provide (i) that the Bidder agrees to serve as the Backup Successful Bid (as defined herein) if it is selected as the next highest and best bid for any particular Assets after the Successful

Bid is determined in accordance with the Bidding Procedures, and (ii) that the Bidder's Bid shall remain open and irrevocable until at least thirty (30) days after the entry of an order by the Bankruptcy Court approving a definitive agreement providing for the Sale of those Assets.

viii.   <u>Identify of Bidders</u>.  Fully disclose the identity of each entity that will be bidding in any Auction scheduled by the Debtors (and any equity holders in the case of a Bidder which is an entity specially formed for the purposes of effectuating the contemplated transaction) and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

ix.   Be submitted to counsel to the Debtor: McDonald & Metcalf, LLP, Attn: Mary E. Kindelt, Chad J. Kutmas, and Gary M. McDonald, mkindelt@mmmsk.com, ckutmas@mmmsk.com, and gmcdonald@mmmsk.com so as to be received not later than the Bid Deadline.  *See* 30.a above.

e.   **Lenders will credit bid:**  The DIP Agent, Pre-Petition Agent, any DIP Lender, or any Pre-Petition Lender are deemed allowed "Credit Bidders" and will credit bid a part or all of their respective outstanding amounts under either the DIP Facility or Pre-Petition Claim Documents pursuant to section 363(k).  Any such credit bid may be made collectively on behalf of all DIP Lenders or the Pre-Petition Lender by the DIP Agent or Pre-Petition Agent, or such credit bid may be made individually by any DIP Lender or Pre-Petition Lender for the amount of debt held by such DIP Lender or Pre-Petition Lender.  Such credit bid shall provide a floor purchase price in the event a Qualified Bidder is not obtained.  The assets purchased subject to the credit bid shall be at the discretion of the DIP Lenders or Pre-Petition Lenders.

f.   **Stalking Horse Bid:**  Subject to the provisions set forth herein and in consultation with the DIP Agent and Pre-Petition Agent, the Debtors shall, on or before February 28, 2019, identify a stalking horse purchaser or purchasers (individually or each a "<u>Stalking Horse Purchaser</u>") and enter into a stalking horse purchase agreement or agreements on terms no less favorable and substantially similar to the terms of the Form APA (each a "<u>Stalking Horse APA</u>") which, individually or collectively, are sufficient to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the claims of the Pre-Petition Lenders (as defined in the Final DIP Order) (the "<u>Stalking Horse Bid</u>"), unless a lower amount is agreed to in writing by the DIP Lenders and Pre-Petition Lenders.  The Form APA shall be available and provided to potential bidders within seven (7) days after entry of the Bidding Procedures Order.  The Stalking Horse Bid shall be subject to higher or otherwise better offers at the Auction (defined below), with any Bidder that submits a Qualified Bid entitled to participate at the auction.  The Stalking Horse APA(s) may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in favor of the Stalking Horse Bidder(s) (the "<u>Bid Protections</u>") in amounts to be determined.  To the extent the Debtors enter into a Stalking Horse APA, the Debtors shall seek expedited approval of its entry into such agreement

13

and any Bid Protections included therein together with the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder (the "Stalking Horse Hearing").  The Debtors shall serve notice of the Stalking Horse APA and the Hearing on the Motion to Sell on all parties receiving notice of the Motion to Approve the Bid Procedures (each, a "Stalking Horse Notice").  Each Stalking Horse Notice will include (i) the identity of the proposed Stalking Horse Bidder; (ii) a summary of the key terms of the Stalking Horse APA; and (iii) a summary of the type and amount of Bid Protections, if any, proposed to be afforded to the Stalking Horse Bidder.  Notwithstanding anything herein or in the Bid Procedures Order to the contrary, all parties in interest with standing shall have the right, at any time before the start of the Sale Hearing, to object to the designation of a Stalking Horse Bidder, the provisions of the Bid Protections to each Stalking Horse Bidder and the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder.

g.     **Initial Highest Bid**:  The Debtors, in consultation with the DIP Agent and Pre-Petition Agent, shall determine which Qualified Bid shall constitute the starting bid at the Auction (the "Baseline Bid"). The Debtors shall notify each Qualified Bidder of the contents of the Baseline Bid. The Baseline Bid shall be subject to higher and better Bids at the Auction.

h.     **Auction:**  In the event the Debtors receive more than one Qualified Bid to any or all of the Assets, the Debtors will conduct the Auction.

The Auction will be governed by the following procedures:

i.     Baseline Bid:  The Bankruptcy Court shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid(s).

ii.     Auction Participants:   In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder.  Each Qualified Bidder must have at least one individual representative in attendance at the Auction with authority to bind the Qualified Bidder.  Only Qualified Bidders and their legal and financial advisors shall be entitled to attend and/or bid at the Auction.  For the avoidance of doubt, the DIP Agent, DIP Lenders, Pre-Petition Agent and Pre-Petition Lenders and their respective advisors and representatives of the Official Committee of Unsecured Creditors, and the Office of the United States Trustee are entitled to attend the Auction.  By attending the Auction, each party present at the Auction agrees to keep the Auction, the Bids at the Auction and all details concerning the Auction

confidential.  The Auction shall be conducted in the presence of a certified court reporter who shall transcribe the Auction.

iii.  <u>Overbid Amounts:</u> A Qualified Bidder wishing to submit a bid at the Auction must bid in an amount that is at least [$50,000] greater than the total consideration contained in the Baseline Bid plus the Bid Protection Amount (the "<u>Minimum Overbid</u>").  Qualified Bidders shall submit subsequent Overbids in increments to be determined by the Debtors in consultation with the DIP Agent and Pre-Petition Agent at the Auction (the "<u>Incremental Bid Amount</u>") for the purchase of the Assets for which it is bidding (each an "<u>Overbid</u>").  During the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder which Overbid reflects, in the Debtor's view, the highest or otherwise best Bid for some or all of the Assets.

iv.  <u>Determination of Successful Bidder.</u>  The Auction shall continue until there is only one offer as to a sale that the Debtors determine in consultation with the DIP Agent and Pre-Petition Agent, subject to Bankruptcy Court approval, is the highest and/or best offer for the purchase of the Assets (whether in an aggregate sale to a single buyer or on an asset by asset basis (each a "<u>Successful Bid</u>" and such Bidder, the "<u>Successful Bidder</u>"), at which point, the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid(s).  Such acceptance by the Debtors of the Successful Bid(s) is conditioned upon approval by the Court of the Successful Bid(s).  The second highest bid, to the extent determined to be acceptable to the Debtors shall be deemed to be the backup bid (the "<u>Backup Successful Bid</u>" and such Bidder, the "<u>Backup Successful Bidder</u>"), provided, however, that the DIP Agent, Pre-Petition Agent and any DIP Lender or Pre-Petition Lender shall not be required to serve as the Backup Successful Bidder in connection with a credit bid.  In the event that the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender makes a determination not to serve as the Backup Successful Bidder (whether before or after submitting any credit bid or other bid), notice shall be provided to the Debtors no later than one (1) business day after the Auction, and the third highest bidder, to the extent determined to be acceptable to the Debtors shall be deemed to be the Backup Successful Bidder.

i.  **Return of Good Faith Deposits**: The Good Faith Deposits of all Qualified Bidders shall be held in one or more accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder(s) nor the Backup Successful Bidder(s) shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.  The Good Faith Deposit of the Backup Successful Bidder(s), if any, shall be returned to the Backup Successful Bidder  on the date that is the earlier of 72 hours after (i) the closing of the

transaction with the Successful Bidder for the property bid upon by the Backup Successful Bidder(s), and (ii) thirty (30) days after the date of entry of the Sale Order.  If the Successful Bidder timely closes the winning transaction, the Good Faith Deposit shall be credited towards the purchase price.  If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, and/or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Successful Bidder without the need for an additional hearing or order of the Court.  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

j.    **Backup Successful Bidder**:  If a Successful Bidder fails to consummate an approved transaction contemplated by its Successful Bid, the Debtors may select the applicable Backup Successful Bidder as the Successful Bidder, and such Backup Successful Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Successful Bidder without further order of the Court or notice to any party.  In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors, and the Debtors specifically reserves the right to seek all available remedies against the defaulting Successful Bidder (or Backup Successful Bidder, if such party shall also breach or fail to perform), as applicable, including with respect to specific performance.   In the event that the Backup Successful Bidder fails to consummate an approved Sale, the Assets may be sold pursuant to one or more subsequent sales.  For the avoidance of doubt, the DIP Agent, Pre-Petition Agent, and any DIP Lender or Pre-Petition Lender shall not be required to serve as the Backup Successful Bidder in connection with a credit bid.  In the event that the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender makes a determination not to serve as the Backup Successful Bidder (whether before or after submitting any credit bid or other bid), the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender, as applicable, shall provide notice to the Debtors no later than one (1) business day after the Auction, and the third highest bidder, to the extent determined to be acceptable to the Debtors shall be deemed to be the Backup Successful Bidder.

**C.    The Form of the Purchase and Sale Agreement**

30.    Although there is no Stalking Horse Bidder at this time, the Debtors have prepared

a form Asset Purchase Agreement (the "Form APA"), a copy of which will be filed prior to the

hearing on this Motion and provided to prospective purchasers, pursuant to which a purchaser

would acquire the Assets.  The Debtors have determined that distributing the Form APA to interested parties provides the best available platform for conducting the Sale and Auction.

**D.      The Sale Notice**

31.      Within three business days following entry of the Bidding Procedures Order, the Debtors will provide notice, substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order (the "Sale Notice"), of the Bidding Procedures Order, Bidding Procedures, the Auction, the Sale Hearing, and the Objection Deadline (defined below).

32.      The Debtors propose to serve the Sale Notice via electronic notice and/or first class United States mail on: (i) all entities contacted by a retained investment banker or reasonably believed by the Debtors to have expressed an interest in the Proposed Transaction with respect to the Assets during the past twelve (12) months prior to the entry of the Bidding Procedures Order; (ii) all parties to executory contracts and unexpired leases with the Debtors; (iii) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (iv) the parties that have filed proofs of claim in the Debtors' case at the addresses set forth in the respective proofs of claim, (v) the parties who have filed a written request for notice in the Debtors' case pursuant to Bankruptcy Rule 2002, and (vi) the office of the United States Trustee, (vii) the Pre-Petition Agent, Pre-Petition Lenders, DIP Agent and DIP Lenders (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (vii) above) (collectively, the "Sale Notice Parties").

33.      The Debtors assert that service of such Sale Notice as proposed herein is sufficient notice of the entry of the Bidding Procedures Order, the Bidding Procedures, the Auction, and the Sale Hearing, including without limitation, the sale of the Assets, and the procedure for objecting

thereto (including the March 15, 2019 objection deadline, the "Objection Deadline," set forth therein), and no other or further notice is necessary.

34.     The Debtors further note that, as soon as possible after the conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder and Successful Backup Bidder.

**E.     The Assumption and Assignment Notice**

35.     In accordance with Bankruptcy Rule 2002, the Debtors must provide notice of the (i) potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (ii) the amount that the Debtors may pay to cure all defaults under executory contracts and unexpired leases that the Debtors proposes to assume and assign (the "Cure Amounts"), and (iii) the deadline for Contract Counterparties (defined below) to file objections to such assumption and assignment, Cure Amounts, the existence of any defaults, and/or adequate assurance of the future performance.  Accordingly, the Debtors requests the approval of the following Assumption and Assignment Procedures for notifying counterparties to executory contracts and unexpired leases of potential Cure Amounts with respect to those executory contracts and unexpired leases that the Debtors proposes to assume and assign to the Successful Bidder (the "Assumed and Assigned Contracts").  Successful Bidder will be responsible for payment of such Cure Amounts of assumed and assigned contracts.

36.     No later than February 22, 2019, the Debtors (i) will file a notice of potential assumption, assignment and/or transfer of the executory contracts and unexpired leases listed therein for each sale (such list, the "Assumption and Assignment Notice")[10] and (ii) serve such

---

[10] The "Assumption and Assignment Notice" shall be substantially in the form attached as **Exhibit A** to the Notice of Proposed (I) Assumption and Assignment of Designated Executory Contracts and (II) Rejection

notice on all non-debtor parties to the Assumed and Assigned Contracts (the "Contract Counterparties").  The Assumption and Assignment Notice shall list the Cure Amounts, if any, that the Debtors believe must be paid by the Successful Bidder to cure all defaults outstanding under each Assumed and Assigned Contract.

37.     The Debtors propose to serve the Assumption and Assignment Notice by (a) first class United States mail, postage prepaid on (i) all counterparties to executory contracts and unexpired leases that may be assumed by the Debtors pursuant to Bankruptcy Code § 365 and that the Successful Bidder or other purchaser of the Assets desires (or may desire) to be assigned by the Debtors; and (ii) on those parties receiving electronic notice through the Court's electronic filing system. The Debtors assert that service of such Assumption and Assignment Notice as proposed is sufficient notice of, among other things, the proposed assumption and assignment of the Assumed and Assigned Contracts, the Cure Amounts, the procedures for objecting thereto, the Sale Hearing, and that no other or further notice is necessary.

38.     In addition, if the Successful Bidder identifies additional executory contracts or unexpired leases that it wishes to add or remove to the Notice of Assumption and Assignment (each an "Additional Contract"), the Debtors shall send a supplemental Notice of Assumption and Assignment to the applicable counterparties to such executory contracts or unexpired leases added or removed from the Notice of Assumption and Assignment.  To the extent an executory contract or lease is not assumed and assigned through the Sale, the Debtors will reject such unassigned executory contract or unexpired lease.

---

of Contracts (the "Assignment and Rejection Notice"), which is attached as **Exhibit 3** to the Bidding Procedures Order.

39.     The Debtors request that the Court require that any objections to the assumption and assignment of the Assumed and Assigned Contracts or Cure Amounts (A "Cure Objection") must: (i) be made in writing and filed on the docket no later than **March 15, 2019 at 4:00 p.m. (Tulsa Time)** (the "Cure Objection Deadline"), (ii) state the basis of such objection with specificity as further explained in the following section of this Motion, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and (iv) be served on the parties set forth in the Bidding Procedures.  Additionally, parties shall have until 12:00 p.m. on the day before the Sale Hearing to file an Adequate Assurance Objection.

40.     At the Sale Hearing, the Debtors and/or the purchaser of the Assets shall (i) present evidence necessary to demonstrate adequate assurance of future performance by the purchaser, and (ii) request entry of an order approving the assumption and assignment of any or all Assumed and Assigned Contracts to be assumed and assigned to the purchaser of the Assets.  For the foregoing reasons, the Debtors believes that granting the relief requested herein is appropriate and in the best interests of all parties-in-interest.

**F.      Objections and Preferential Rights**

41.     The Debtors further request that the following objection requirements and related procedures (substantially in the form below) be implemented with respect to the Sale Notice and Assignment Notice discussed herein:

   a.  Any person or entity failing to timely file an objection to the Sale by the  March 15, 2019 shall be forever barred from doing so, including from objecting to the transfer of the Debtors' right, title and interest in, to and under the Debtors' Assets free and clear of any and all liens, encumbrances, claims and other interests, and will be deemed to consent to the Sale.

   b.  If any person or entity asserts that any property or right (including with respect to any Assumed and Assigned Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the applicable purchase and sale agreement on account of

one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights (a "Preferential Right"), then such person or entity must file a notice with the Clerk of the Bankruptcy Court with all supporting documentation (a "Rights Notice") on or before the Bid Deadline.  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

c.   Any person or entity failing to timely file a Rights Notice will be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtor's Assets, including, from asserting any alleged Preferential Rights with respect to the Debtor's transfer, sale, assumption, and/or assignment of the Debtor's Assets, and (b) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of the Debtor's Assets free and clear of all liens, encumbrances, claims and other interests.

d.   If any person or entity timely files a Rights Notice, the Debtor will have the opportunity to object to any alleged Preferential Rights asserted by filing an objection to such Rights Notice at any time prior to the Sale Hearing.  Upon the filing of such objection to the Rights Notice, any rights asserted are deemed to be disputed and the Debtor is entitled to assert a bona fide dispute exists as to such rights asserted.

42.    The Debtors respectfully requests that this Court approve the foregoing notice and objection procedures.

## G.    Sale of Assets Free and Clear of Interests

43.    The Debtors have determined in their sound business judgment that a sale transaction(s) pursuant to 11 U.S.C. § 363 is in the best interest of their estates and creditors. Therefore, the Debtors hereby request that this Court approve the Sale of the Debtors' Assets to the Successful Bidder (or Backup Bidder, as the case may be) free and clear of all Claims and Interests.  As noted above, the Debtors are filing a separate Sale Motion in short order.

### H.      Good Faith Sale

44.      The Debtors submit that any Successful Bidder complying with the Bidding Procedures will have participated in a good faith manner in the Auction in accordance with the Bidding Procedures, which require that, among other things, the Auction participants must represent that they have not engaged in any collusion, and that Bidding be conducted openly. Therefore, the Debtors will present evidence at the Sale Hearing in support of its request that this Court find that the Successful Bidder is a good faith purchaser entitled to the full protections afforded pursuant to § 363(m) of the Bankruptcy Code in conjunction with any sale.

### I.      Request to Schedule Sale Hearing

45.      The Debtors request that this Court set the Sale Hearing on or about March 26, 2019, presuming that a complete Sale Motion shall have been filed on February 28, 2019.  The Debtors shall timely file a separate Sale Motion outlining the relief sought in conjunction with the Sale.  At the Sale Hearing, the Debtors intend to seek entry of a Sale Order (i) approving the Sale, free and clear of all Claims and Interests, and (ii) authorizing the assumption and assignment of the Assumed and Assigned Contracts.  For purposes of full disclosure, in the Sale Order, the Debtors will seek to sell its Assets free and clear of all liens, interests, claims and encumbrances to the fullest extent possible pursuant to Bankruptcy Code section 363(f), including without limitation, successor liability or similar theories (except for those assumed liabilities and obligations, expressly assumed pursuant to the applicable purchase and sale agreement) and the Successful Bidder will be protected from liability for and cannot be pursued for any claims owed by the Debtors.  In addition, the Sale Order will have findings that the Sale is not a fraudulent conveyance.  It is expected that the applicable purchase and sale agreement will contain these, and other standard provisions, as conditions to the Sale.

J.      **Assumption and Assignment of Executory Contracts and Unexpired Leases**

46.     Pursuant to § 365 of the Bankruptcy Code (and as more fully discussed below), Debtors request that this Court approve the assumption and assignment of executory contracts and unexpired leases to the successful purchaser as designated in any applicable purchase agreement.

K.      **Waiver of 14-Day Stay**

47.     Because time is of the essence in regard to the transactions contemplated herein, Debtors request that this Court waive the 14-day stay provided in Bankruptcy Rules 6004(a) and 6006(d) for the orders requested herein.

## ARGUMENTS AND AUTHORITIES

A.      **The Bidding Procedures are Reasonable, Appropriate, and Will Maximize Value**

48.     A debtor may sell, after notice and a hearing, its assets outside the ordinary course of business. 11 U.S.C. § 363.  As a general matter, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the tendered purchase price is the highest and best offer under the circumstances of the case.  *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res*., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bay Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.*), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

49.     The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts in this and other districts as a means of ensuring that such sale will generate the

highest and best return for a debtor's estate.[11]   The Debtors submit that the foregoing Bidding Procedures and the opportunity for competitive bidding embodied therein are reasonable and designed to maximize the value of the Debtors' estate and should, therefore, be approved by this Court.

50.     Given the Debtors' liquidity position the Debtors believe that a prompt sale process is the best way to maximize the value of its assets for the benefit of its estate, creditors and other stakeholders.  To this end, the Debtors have developed the Bidding Procedures, which will give the Debtors an opportunity to consider competing bids and select the highest and best offer for its Assets.  The Debtors submit that the Bidding Procedures and Auction should promote active bidding from seriously interested parties, which will increase the likelihood that the Debtors will receive the best possible consideration for the Assets.  Additionally, the Bidding Procedures will allow the Debtors to conduct an Auction in a fair and open fashion that will encourage participation by financially capable bidders that have the ability to close on the Sale.  This process is designed

---

[11] Section 363 of the United States Bankruptcy Code provides that a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A majority of courts, including all courts that have decided the issue in the Tenth Circuit, have held that § 363(b) allows a debtor-in-possession to sell all or substantially all of its assets in a Chapter 11 proceeding prior to confirmation of a plan of reorganization.  *See, e.g., In re Ancor Exploration Co.*, 30 B.R. 802, 808 (N.D. Okla. 1983); *In re Allison*, 39 B.R. 300, 301 (Bankr. D. N.M. 1984); *In re Medical Software Solutions*, 286 B.R. 431, 439-40 (Bankr. D. Utah 2022); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *see also 3 Collier on Bankruptcy* ¶ 363.02[4], at p. 363-19-20 (Alan N. Resnick & Henry Sommer, eds. 15th rev. ed. 2003).  A sale of substantially all of a debtor-in-possession's assets under § 363(b) is a matter within a court's discretion, giving due consideration to the sound business judgment of the debtor-in-possession.  *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983); *Castre*, 312 B.R. at 428 (citing *Lionel*).  Courts typically consider multiple factors to determine whether to approve such sales, including: (i) whether there is a sound business reason for the sale; (ii) whether there has been adequate notice to interested parties; (iii) whether the terms of the sale have been fully disclosed; (iv) whether the debtor-in-possession's relationship with the buyer taints the sale; and (v) whether the buyer is proceeding in good faith.  *Medical Software Solutions*, 286 B.R. at 439-40; *see also Castre*, 312 B.R. at 428.  The relevant factors to support a § 363 sale are met in this case and the sale of the Assets to the successful bidder under the proposed bidding procedures should be approved by the Court.  The sale is the best opportunity to promptly realize the maximum value of Debtors' most valuable assets and to preserve the value of the same for the benefit of creditors and interest holders.

to generate a higher sale price than would otherwise be obtained through a chapter 7 liquidation or foreclosure under applicable state law, which are apparently the Debtors' only other alternatives to the relief it seeks in this Case.

51.     Furthermore, Debtors' payment of a Break-Up Fee as part of the Sale is a widely accepted practice in bankruptcy court sales.  Termination fees should be allowed when the fee is necessary to preserve the value of the estate.  *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999).  Whether a fee is "necessary" is judged under the business judgment rule. *Id.*; *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *In re Integrated Resources, Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), appeal dismissed by 3 F.3d 49 (2d Cir. 1993).

52.     Under the business judgment rule, a debtor's decision to enter into a termination fee is proper so long as the following conditions are satisfied: (a) the relationship of the parties who negotiated a breakup fee is not tainted by self-dealing or manipulation; (b) the termination fee does not hamper bidding; and (c) the amount of the termination fee is not unreasonable relative to the proposed purchase price.  *Integrated Resources*, 147 B.R. at 657.  To determine whether a termination fee encourages rather than hampers bidding, courts will look to see whether the fee: (i) attracts or retains a potentially successful bid; (ii) establishes a bid standard or minimum for other bidders to follow; or (iii) attracts additional bidders.  *Id*. at 662.

53.     A termination fee should constitute a fair and reasonable percentage of the proposed purchase price and should be reasonably related to the prospective purchaser's risk, effort, and expenses.  *Id*. at 662; *see also In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

54.     Application of the business judgment test, as set forth above, illustrates that Debtors should be authorized to pay a Break-Up Fee in connection with the Sale of the Stalking Horse

Assets.  The Break-Up Fee is fair and reasonable, particularly in view of Stalking Horse Bidder's agreement to serve as a "safety net" for the bidding process.  The payment of the Break-Up Fee is critical to the continuing obligation of the Stalking Horse Bidder to purchase the Stalking Horse Assets.  Here, the Debtors will file a separate pleading if and when a Stalking Horse Bidder is identified setting forth the proposed Break-Up Fee and any other bid protections.

55.     Accordingly, in the exercise of its reasonable business judgment, the Debtors have concluded that: (a) a prompt sale of the Assets is the best way to maximize value for its estate, and (b) the proposed Bidding Procedures described herein are the most effective method of obtaining the highest and best offer for those Assets.

**B.     The Proposed Sale Notice is Reasonable Under the Circumstances**

56.     Pursuant to Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the Sale, including a disclosure of the time and place of any auction, the terms and conditions of the sale, and the deadline for filing any objections.  The Debtors submit that the notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, Bidding Procedures, Auction, and Sale Hearing to the Debtors' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Debtors' Assets.  In addition, the Sale Notice, the Debtors shall file a notice with the Court announcing the Successful Bid and the Sale Hearing promptly after the conclusion of the Action in accordance with the Bidding Procedures.

57.     Accordingly, the Debtors respectfully request the Court to approve the notice procedures set forth in this Motion, including the form and manner of service of the Sale Notice,

and that no other or further notice of the Sale, Bidding Procedures, Auction or Sale Hearing is necessary or required.

**C.      Assumption and Assignment of Executory Contracts and Unexpired Leases**

58.      Pursuant to Bankruptcy Code § 365, the Debtors request authority to assume and assign to the Successful Bidder the Assumed and Assigned Contracts pursuant to the Assumption and Assignment Procedures (discussed above) and to assign the Debtors' right, title and interest in, to and under those contracts and leases and rights thereunder to the Successful Bidder, subject to, and at the time of, the closing of the Sale.

59.      Here, the Successful Bidder may desire to acquire the benefit of certain of the Debtors' executory contracts and unexpired leases and have the rights thereunder determined prior to the closing of the Potential Transaction.  In order to accommodate any such desire, the Debtors submit that the Assumption and Assignment Procedures set forth herein will provide a fair opportunity to all Contract Counterparties to object to the proposed assumption and assignment.

60.      Accordingly, the Debtors respectfully submit that the procedures proposed herein are appropriate and reasonably tailored to provide non-debtor counterparties with adequate notice of the proposed assumption and assignment of the applicable Assumed and Assigned Contract, as well as proposed Cure Amounts, if applicable, through the Assumption and Assignment Notice. The Debtors further submit that, based on the foregoing (and any evidence or argument made at the Sale Hearing to the extent objections arise), the Debtors should be permitted to assume and assign its Assumed and Assigned Contracts.

<u>**REQUEST FOR RELIEF**</u>

The Debtors respectfully request that this Court enter the Bidding Procedures Order attached as **Exhibit A** and thereby authorize and approve the (i) Bidding Procedures for the Sale

of the Assets, (ii) proposed date and time of the Sale Hearing, (iii) form and manner of notice of respective dates, times, deadlines (including objection deadlines), and places in connection with the Sale, (iv) Assumption and Assignment Procedures, and (v) grant any related relief.

The Debtors further request that, at the Sale Hearing, the Court enter the Sale Order, which will be filed by the Debtors before the Sale Hearing, (i) authorizing the Sale of the all the Debtors' Assets free and clear of all claims, liens, encumbrances, and other interests pursuant to Section 363 of title 11 of the United States Code, (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (iii) granting related relief.  As noted above, a separate Sale Motion will be filed with the Court to address this additional relief.

Dated: December 26, 2018

Respectfully submitted,

*/s/ Chad J. Kutmas*
_____
Gary M. McDonald, OBA No. 5960
Chad J. Kutmas, OBA No. 19505
Mary E. Kindelt, OBA No. 21728
MCDONALD & METCALF, LLP
First Place Tower
15 E. Fifth Street, Suite 1400
Tulsa, OK 74103
(918) 430-3700
(918) 430-3770 (Fax)

*Counsel for the Debtors and Debtors in Possession*

# EXHIBIT "A"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re:

NICHOLS BROTHERS, INC.,
an Oklahoma  corporation,  *et al.*,[1]

Debtors.

Chapter 11

Case No. 18-11123-M

Jointly Administered

## ORDER (I) APPROVING BIDDING PROCEDURES; (II) PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) NOTICES RELATING TO THE SALE OF THE DEBTORS' ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (IV) GRANTING RELATED RELIEF
### [This Order Relates to the Motion at Docket No. __]

Upon consideration of the Motion[2] (the "Bidding Procedures Motion") of the Debtors, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for, among other things, entry of an order (this "Order" or "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures"), a copy of which is attached hereto as **Exhibit 1**, in connection with the Sale of all the Debtors' Assets, (ii) approving procedures for determining cure amounts (the "Cure Amount") for executory contracts and unexpired leases; (iii) approving the form and manner of notice of such sale of the Debtors'

---

[1] The Debtors in these jointly administered cases are:  NICHOLS BROTHERS, INC., Case No. 18-11123-TLM; NBI PROPERTIES, INC., Case No. 18-11124-M; N B I  SERVICES, INC., Case No. 18-11125-M; LADDER COMPANIES, INC., Case No. 18-11126-M; RED WATER RESOURCES, INC., Case No. 18-11127-M; CANO PETRO OF NEW MEXICO, INC., Case No. 18-11128-M; and W.O. OPERATING COMPANY, LTD., Case No. 18-11129-M.  This Bid Procedures Order does not effect W.O. Operating Company, Ltd., Case No. 18-11129-M, which is disposing of substantially all of its assets by separate Sale Motion and Order.

[2] Capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006 to Authorize and Approve the (I) Bidding Procedures, (II) Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (III) Notices Relating to the Sale of the Debtors' Assets and the Assumption and Assignment of Executory Contracts, (IV) Approval of the Proposed Sale of Assets and Scheduling of a Hearing on Approval of the Proposed Sale of Assets, and (VI) Granting Related Relief [Docket No. ___].

assets (the "Sale Notice"), a copy of which is attached hereto as **Exhibit 2** and form and manner of notice relating to assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Notice"), a copy of which is attached hereto as **Exhibit 3**, and (iv) granting related relief; and the Court having conducted a hearing to consider the relief requested in the Bidding Procedures Motion (the "Bidding Procedures Hearing"); and the appearance of all interested parties and all responses and objections, if any, to the relief requested in the Bidding Procedures Motion having been duly noted in the record of the Bidding Procedures Hearing; and upon the record of the Bidding Procedures Hearing, and all other pleadings and proceedings in this case, including the Bidding Procedures Motion; and it appearing that the Bidding Procedures are in the best interests of the Debtors and their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory and legal predicates for the relief requested in the Bidding Procedures Motion and provided for herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, and the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the Northern District of Oklahoma (the "Local Rules").

D.      Good and sufficient notice of the relief sought in the Bidding Procedures Motion has been given under the circumstances and such notice complies with the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  Accordingly, no further notice of the Bidding Procedures Motion is necessary or required.

E.      On January ___, 2019, the Debtors filed the Motion to Sell Substantially all of their Assets [Docket No. __] (the "Sale Motion") seeking approval of the sale of all of the Debtors' Assets to one or more buyers pursuant to these Bidding Procedures.  Under the circumstances, the Bidding Procedures constitute a reasonable, sufficient, adequate, and proper means to provide potential competing bidders with an opportunity to submit bids, and are reasonably calculated to enable the Debtors to pursue and obtain the highest possible sale price for its Assets pursuant to the Sale Motion.

F.      The Sale Notice and the Assumption and Assignment Notice are reasonably calculated and sufficient to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (Sale Hearing); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order (the "Objection Deadline"), and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets to be sold; (v) a description of the Sale as being free and clear of liens, claims, encumbrances and other interests (except as set forth in the Form APA or Qualified APA, as applicable), with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the Sale proceeds, and no other or further notice of the Sale shall

be required, and (vi) the assignment and assumption procedures (including with respect to the deadlines to file Cure Objections and Adequate Assurance Objection).

**NOW THEREFOR, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Bidding Procedures Motion is GRANTED.

2.      Any objections to the Bidding Procedures Motion or the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      The Bidding Procedures, which are attached as **Exhibit 1**, are hereby approved in their entirety and are incorporated herein by reference, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The following deadlines are hereby approved and shall apply to this sale process and sale of the Debtors' Assets pursuant to the Sale Motion:

| | |
|---|---|
| Deadline to file Assumption Notice | February 22, 2019 |
| Deadline to file Sale Motion and Designate Stalking Horse (if any) | February 28, 2019 |
| Deadline to file Cure Objection | March 15, 2019 |
| Deadline for filing of Sale Objection | March 15, 2019 |
| Deadline to file Adequate Assurance Objection | March 15, 2019 |
| Bid Deadline for Competing Bids | March 21, 2019 |
| Deadline to submit Rights Notice | March 21, 2019 |
| Designation of Qualified Bidders | March 25, 2019 |
| Auction (Sale Hearing) | March 26, 2019 |

4.      The DIP Agent, Pre-Petition Agent, any DIP Lender, or any Pre-Petition Lender are deemed allowed "Credit Bidders" and may credit bid all of their respective outstanding amounts under either the DIP Facility or Pre-Petition Claim Documents pursuant to section 363(k). Any such credit bid may be made collectively on behalf of all DIP Lenders or the Pre-Petition Lender by the DIP Agent or Pre-Petition Agent, respectively, or such credit bid may be made individually by any DIP Lender or Pre-Petition Lender for the amount of debt held by such DIP Lender or Pre-Petition Lender

5.      At the Auction (Sale Hearing), when only one Qualified Bidder remains and the Debtors have selected the Qualified Bidder that has submitted the highest and best bid (the "Successful Bidder"), the Auction (Sale Hearing) will conclude.  No bids may be accepted after the conclusion of the Auction (Sale Hearing).  As soon as reasonably practicable following the conclusion of the Auction (Sale Hearing), the Debtors shall: (a) notify the Successful Bidder (the "Successful Bidder") that such bidder's offer has been determined by the Debtors to be the Successful Bid, subject only to Court approval; (b) notify the Back-Up Bidder that such bidder's offer has been determined by the Debtors to be the Back-Up Bid; and (c) file a notice with the Court announcing the Successful Bidder and Back-Up Bidder.

6.      If only one Qualified Bid is received by the Debtors by the Bid Deadline, the Debtors shall not hold an Auction and such Qualified Bid shall be the Successful Bid. If no Qualified Bid is received by the Debtors by the Bid Deadline, the Debtors shall not hold an Auction and shall seek approval of a Sale of the Assets pursuant to the Sale Motion to one or more of the Pre-Petition Lenders or DIP Lenders pursuant to a credit bid with the Assets to be purchased via credit bid subject to determination by the Pre-Petition Lenders or DIP Lenders in their sole discretion.

7.     All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Sale Motion,  the proposed Sale, their bids, the Auction, the terms and conditions of the transfer of the Assets, and the marketing process and waive the right to assert any other venue and any right to a jury trial in connection with any disputes relating to the proposed Sale, their bids, the Auction, the terms and conditions of the transfer of the Assets, and the marketing process.

8.     The Court will consider approval of the Sale Motion and Sale to the Successful Bidder at the Auction (Sale Hearing on) **on March 26, 2019, at _____ __.m. (Central Time Time) (the "<u>Sale Hearing</u>")**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

9.     Within five (5) business days following entry of this Order, the Debtors shall serve the Sale Notice by first class mail, postage prepaid (or email, if available), upon the Sale Notice Parties.

10.     All objections to the Sale or any relief requested in the Sale Motion, must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; and (d) filed with the Clerk of the Bankruptcy Court, 224 South Boulder, Tulsa, Oklahoma 74103 by no later than **5:00 p.m. (Central Time) on March 15, 2019** (the "<u>Objection Deadline</u>").  Each objection shall state the legal and factual basis of such objection.  If an objection is not filed on or before the Objection Deadline in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale Motion and

shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

11.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Bidding Procedures Motion, on the other hand, this Order and the Bidding Procedures shall control and govern.

12.     The Sale Notice and Assignment and Assumption Notice substantially in the forms attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, are approved in all respects.  No other or further notice of the Bidding Procedures, the Sale Hearing, relevant objection or other deadlines with respect to the Sale Motion, or the Sale is required.

13.     As set forth in the Assumption and Assignment Notice, the Cure Objection Deadline is **March 15, 2019 at 5:00 p.m. (central time)**.  Any Contract Counterparty that fails to file Cure Objection by the Cure Objection Deadline shall be deemed to have forever waived and released any right to assert to contest the proposed Cure Amount.  Any Adequate Assurance Objection must be filed with the Court by 12:00 p.m. on the day before the Sale Hearing.  Any Contract Counterparty that fails to timely file a Cure Objection or Adequate Assurance Objection shall, as the case may be, be estopped from (i) objecting to the Cure Amounts set forth on the Assumption and Assignment Notice; and (ii) objecting to the assumption, assignment, or assignment, as the case may be, of its Transferred Contract to the Successful Bidder.

14.     If, after the Cure Objection Deadline and Adequate Assurance Deadline, the Successful Bidder identifies additional executory contracts or unexpired leases that it wishes to add or remove from the Assumption and Assignment Notice (each an "Additional Contract") the Debtors shall file with the Court and send a supplemental Assumption and Assignment Notice to the applicable counterparties to such executory contracts or unexpired leases adding or removing

them from the Assumption and Assignment Notice.  Any objections to the assumption and assignment of an Additional Contract or the rejection of an executory contract or unexpired lease removed from the Assumption and Assignment Notice must be filed within ten days after service of such supplemental Assumption and Assignment Notice.  The Successful Bidder may add or remove executory contracts or unexpired leases from the Assumption and Assignment Notice up until closing of the proposed Sale.

15.     If any person or entity asserts that any property or right (including with respect to any Assumed and Assigned Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the applicable purchase and sale agreement on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights (a "Preferential Right"), then such person or entity must file a notice with the Clerk of the Bankruptcy Court with all supporting documentation (a "Rights Notice") on or before the Bid Deadline, which is March 21, 2019.  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

16.     Any person or entity failing to timely file a Rights Notice will be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' Assets, including, from asserting any alleged Preferential Rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' Assets, and (b) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of the Debtors' Assets free and clear of all liens, encumbrances, claims and other interests.

17.     If any person or entity timely files a Rights Notice, the Debtors will have the opportunity to object to any alleged Preferential Rights asserted by filing an objection to such Rights Notice at any time prior to the Sale Hearing.  Upon the filing of such objection to the Rights Notice, any rights asserted are deemed to be disputed and the Debtors are entitled to assert a bona fide dispute exists as to such rights asserted.

18.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rule 6004(h) or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

19.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

SIGNED: January ___, 2019


_____
THE HONORABLE TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**

**Bidding Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>NICHOLS BROTHERS, INC.,<br>an Oklahoma corporation, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11123-M<br><br>Jointly Administered |

## BIDDING PROCEDURES

On _____ _____, 2018, the U.S. Bankruptcy Court for the Northern District of Oklahoma (the "Bankruptcy Court") entered the *Order (i) Approving Bidding Procedures; (ii) Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (iii) Notices Relating to Sale of the Debtors' Assets and the Assumption and Assignment of Executory Contracts, and (iv) Granting Related Relief* [Docket No. ___] (the "Bidding Procedures Order") in which the Bankruptcy Court approved the following procedures (the "Bidding Procedures") setting forth the process by which Nichols Brothers, Inc., *et al* (collectively, the "Debtors") are authorized to conduct a sale or sales (the "Sale") of substantially all of its assets (collectively, the "Assets"), which are defined and described in further detail in the Form APA. The Debtors have also filed a separate Motion to Sell Substantially all of their Assets [Docket No. ___] (the "Sale Motion") seeking to sell substantially of their assets pursuant to these Bidding Procedures.

1. **Key Dates**

| | |
|---|---|
| Deadline to file Assumption Notice | February 22, 2019 |
| Deadline to File Sale Motion and Designate Stalking Horse (if any) | February 28, 2019 |
| Deadline to file Cure Objection | March 15, 2019 |
| Deadline for filing of Sale Objection | March 15, 2019 |
| Deadline to file Adequate Assurance Objection | March 15, 2019 |
| Bid Deadline for Competing Bids | March 21, 2019 |
| Deadline to submit Rights Notice | March 21, 2019 |

---

[1] The Debtors in these jointly administered cases are:  NICHOLS BROTHERS, INC., Case No. 18-11123-TLM; NBI PROPERTIES, INC., Case No. 18-11124-M; N B I  SERVICES, INC., Case No. 18-11125-M; LADDER COMPANIES, INC., Case No. 18-11126-M; RED WATER RESOURCES, INC., Case No. 18-11127-M; CANO PETRO OF NEW MEXICO, INC., Case No. 18-11128-M; and W.O. OPERATING COMPANY, LTD., Case No. 18-11129-M.

| Designation of Qualified Bidders | March 25, 2019 |
| Auction (Sale Hearing) | March 26, 2019 |

**2.      Assets to be Sold**

The Assets consist of the Debtor's leasehold and other oil and gas interests in wells and leases located in Oklahoma, Texas and New Mexico, as well as related assets, including, but not limited to, joint operating agreements, pooling orders, oil and gas production sales agreements, surface leases, easements, various machinery and production equipment appurtenant to or used in connection with these operations.[2]  Pursuant to the Sale Motion, the Assets will be sold free and clear of all liens, claims, encumbrances and other interests (except as otherwise set forth in the applicable asset purchase agreement).

The Debtors may consider bids for all or substantially all of the Assets (or any portion of the Assets) in a single bid from a single bidder or multiple bids from multiple bidders for the Assets. Bids to purchase the Assets must provide cash payment (or credit bids under section 363(k)) plus assumption of any specified liabilities.

**3.      Due Diligence**

Subject to execution of a confidentiality agreement on terms reasonably acceptable to the Debtors (a "Confidentiality Agreement"), any party willing to submit any proposal, solicitation or offer (each, a "Bid") for the Assets (such party, a "Potential Bidder") may be granted access to public and non-public information relating to the Assets to facilitate its consideration of making its Bid, including access to the Debtor's on-line data room (the "Due Diligence Data Room"). Any confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement for the purposes of these Bidding Procedures.

The Debtors shall provide to each Potential Bidder reasonable due diligence information as necessary to enable such Potential Bidder to evaluate the Assets.  Potential Bidders interested in conducting due diligence should contact the Debtor's CRO, Bill Koehler, and Debtor's investment banker.  The Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline and shall have no obligation to furnish due diligence information requested by one Potential Bidder to the other Potential Bidders.

In connection with the provision of due diligence information to Potential Bidders, the Debtors or their representative shall not furnish any confidential information relating to the Assets, liabilities of the Debtor, or the Sale to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent covered by the applicable Confidentiality Agreement.

---

[2]      The Assets and the Debtor's interests therein are more particularly described in the Form APA.  Excluded from Assets are the oil and gas properties of W.O. Operating Company, Ltd., which have been previously sold.

The Debtors and its advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders (including on-site inspection of Assets); provided, however, that the Debtors may decline to provide such information to any Potential Bidder who, in the Debtors' reasonable business judgment has not established that such Potential Bidder intends in good faith to, or has the capacity to, consummate a transaction. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

4.      **"As is, Where is"**

Other than as specifically provided in a Qualified APA(s) (as defined below), as applicable, any Sale of the Assets shall be without representation or warranties of any kind, nature or description by the Debtors, their agents or their estates. All of the Assets shall be transferred "as is," "where is" and "with all faults." THE DEBTORS EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET. Except as otherwise provided in the Form APA or applicable Qualified APA, all of the Debtors' rights, title, and interests in and to the respective Assets will be transferred free and clear of all liens, claims, encumbrances and other interests in accordance with Section 363(f) of the Bankruptcy Code.

Each Potential Bidder for any of the Assets will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct due diligence regarding the Assets prior to making its Bid; (b) has relied solely upon its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid; and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Assets, or the completeness of any information provided in connection with the Sale or the Auction.

5.      **Stalking Horse Bids**

Subject to the provisions set forth herein and in consultation with the DIP Agent and Pre-Petition Agent, the Debtors shall, on or before **February 28, 2019**, identify a stalking horse purchaser or purchasers (individually or each a "Stalking Horse Purchaser") and enter into a stalking horse purchase agreement or agreements on terms no less favorable and substantially similar to the terms of the Form APA (each a "Stalking Horse APA") which, individually or collectively, are sufficient to indefeasibly pay in full in cash and completely satisfy the DIP Obligations and the claims of the Pre-Petition Lenders (as defined in the Final DIP Order) (the "Stalking Horse Bid"), unless a lower amount is agreed to in writing by the DIP Lenders and Pre-Petition Lenders. The Form APA shall be available and provided to potential bidders within seven (7) days after entry of the Bidding Procedures Order. The Stalking Horse Bid shall be subject to higher or otherwise better offers at the Auction (defined below), with any Bidder that submits a Qualified Bid entitled to participate at the auction. The Stalking Horse APA(s) may contain certain customary terms and conditions, including expense reimbursement and a break-up fee in favor of the Stalking Horse Bidder(s) (the "Bid Protections") in amounts to be determined. To the extent the Debtors enter into a Stalking Horse APA, the Debtors shall seek expedited approval of its entry

into such agreement and any Bid Protections included therein together with the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder (the "Stalking Horse Hearing").  The Debtors shall serve notice of the Stalking Horse APA and the Stalking Horse Hearing on all parties receiving notice of the Motion to Approve the Bid Procedures (each, a "Stalking Horse Notice").  Each Stalking Horse Notice will include (i) the identity of the proposed Stalking Horse Bidder; (ii) a summary of the key terms of the Stalking Horse APA; and (iii) a summary of the type and amount of Bid Protections, if any, proposed to be afforded to the Stalking Horse Bidder.  Notwithstanding anything herein or in the Bid Procedures Order to the contrary, all parties in interest with standing shall have the right, at any time before the start of the Stalking Horse Hearing, to object to the designation of a Stalking Horse Bidder, the provisions of the Bid Protections to each Stalking Horse Bidder and the terms and conditions under which such Bid Protections would be payable to the Stalking Horse Bidder.

Any Stalking Horse APA executed by the Debtors and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtors will be deemed to be a Qualified Bidder.

No party submitting a bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections granted to a Stalking Horse Bidder which have been approved by the Bankruptcy Court.  Any substantial contribution claims under section 503(b) of the Bankruptcy Code or otherwise by any bidder are deemed waived in connection with submitting a bid.

If a Stalking Horse Purchaser is not designated by the Debtors on or before **February 28, 2019** (the "Stalking Horse Bid Deadline"), then the Debtors shall proceed with the sale process without a Stalking Horse Bid or Stalking Horse Purchaser, and all other terms and deadlines set forth in the Bidding Procedures shall remain in full force and effect.

### 6.    Qualified Bids

In order to constitute a Qualified Bid (as defined below), any proposal, solicitation or offer for the Assets (each, a "Bid") submitted by a bidder (each, a "Bidder") must (i) be submitted in writing prior to **March 21, 2019 at 12:00 p.m.** (**Central Time**) (the "Bid Deadline") and (ii) satisfy the following requirements, as determined by the Debtors in their reasonable business judgment in consultation with the DIP Agent and Pre-Petition Agent (collectively, the "Bid Requirements"):

(a)    Qualified APA.  Bid must contain a signed definitive asset purchase agreement (together with a copy of the signed agreement that is marked to show changes from the Form APA) (a "Qualified APA") and shall:

i.    identify the Assets the Bidder seeks to purchase,

ii.    contain the form of and total consideration to be paid by such Bidder, including the amount of proposed cash consideration and liabilities to be assumed, with such consideration allocated on an asset by asset basis,

iii.  provide for the assumption of all plugging and abandonment and other obligations relating to the Assets subject to the Bid as set forth in the Form APA (the "Assumed Liabilities"),

iv.  provide for the performance of the bonding obligations required by the Form APA relating to the Assets subject to the Bid,

v.  be on terms no less favorable (in the Debtor's reasonable business judgment in consultation with the DIP Agent and Pre-Petition Agent) than the Form APA, including after consideration of any Bid Protections payable thereunder, if any, and

(b)   No Contingencies.  Bid must not be subject to any: (a) financing contingency, (b) contingency relating to due diligence after the Bid Deadline, (c) contingency relating to the approval of the Bidder's board of directors or other internal approvals or non-governmental third-party consents or approvals, or (d) any conditions precedent to the Bidder's obligation to purchase the Assets other than those included in the Form APA.

(c)   Good Faith Deposit.  A Bid must be accompanied by the delivery of a certified or bank check or wire transfer in the amount of at least 10% of the purchase price proposed in the Qualified APA as a good faith deposit (the "Good Faith Deposit") as liquidated damages if the Bidder shall default with respect to its offer.  If the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender is credit bidding, the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender shall not be required to submit a Good Faith Deposit.

(d)   Commitment.  Bid must contain a written statement that the Bidder agrees to be bound by the terms of the Bidding Procedures and the Bidding Procedures Order and include a commitment that the Bidder shall (i) commence and complete all filings with respect to necessary government and other approvals within three (3) days following the entry of the Sale Order (as defined below) with respect to the relevant Assets and (ii) consummate the purchase of the relevant Assets within ten (10) days following entry of the Sale Order.

(e)   Assumed Contracts and Leases. The Bid must identify, with particularity, each and every executory contract and unexpired lease the Bidder intends to assume; provided, however, that such list of contracts may be later modified to the extent permitted under the Qualified APA.

(f)   Proof of Authority and Capability. The Bid must be accompanied by evidence satisfactory to the Debtors that the Bidder is willing, authorized (including by such Bidder's board of directors or comparable governing body), capable and qualified financially, operationally, legally and otherwise, of unconditionally performing all obligations under the Qualified APA, including, without limitation, (1) all Assumed Liabilities with respect to the relevant Assets, and (2) the ability to provide adequate assurance of future performance under contracts and leases to be assumed pursuant

5

to Section 365 of the Bankruptcy Code.  The Bid will also contain written evidence of a firm commitment for financing or other evidence of ability to consummate the proposed transaction without financing, provided however, that the Debtors will determine in their business judgment and in consultation with the DIP Agent and Pre-Petition Agent whether the written evidence of such financial wherewithal is acceptable; provided further that such evidence need not be provided by the DIP Agent or Pre-Petition Agent if their respective entire Bid is a credit bid.

(g)     <u>Backup Successful Bidder</u>.  Bid must provide (i) that the Bidder agrees to serve as the Backup Successful Bid (as defined herein) if it is selected as the next highest and best bid for any particular Assets after the Successful Bid is determined in accordance with the Bidding Procedures, and (ii) that the Bidder's Bid shall remain open and irrevocable until at least thirty (30) days after the entry of an order by the Bankruptcy Court approving a definitive agreement providing for the Sale of those Assets.

(h)     <u>Identity of Bidders</u>.  Fully disclose the identity of each entity that will be bidding in any Auction scheduled by the Debtors (and any equity holders in the case of a Bidder which is an entity specially formed for the purposes of effectuating the contemplated transaction) and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

(i)     Be submitted to the Debtors, Attn:  Bill Koehler, bkoehler@jbktulsa.com or PO Box 4770, Tulsa, OK 74159-0470, and to counsel to the Debtor: McDonald & Metcalf, LLP, Attn: Mary E. Kindelt, Chad J. Kutmas, and Gary M. McDonald, mkindelt@mmmsk.com,  ckutmas@mmmsk.com,  and  gmcdonald@mmmsk.com so as to be received not later than the Bid Deadline.  Within one (1) day of receipt, counsel for the Debtors shall forward any Bid received to counsel to the DIP Agent and Pre-Petition Agent, Crowe & Dunlevy, P.C., 500 Kennedy Building, 321 South Boston Avenue, Tulsa, Oklahoma 74103, mark.craige@crowedunlevy.com. The Debtors, in consultation with the DIP Agent and Pre-Petition Agent, may extend the Bid Deadline until the start of any Auction for one or more bidders without further notice, but shall not be obligated to do so.

## 7.     Qualified Bidders

A Bid that satisfies each of the Bid Requirements, as determined in the Debtors' reasonable business judgment in consultation with the DIP Agent and Pre-Petition Agent shall constitute a "Qualified Bid," and such Potential Bidder shall be a "Qualified Bidder." The Debtors shall notify each Qualified Bidder that such party is a Qualified Bidder by **March 25, 2019**.  The Bidder identified by the Debtors as the "Stalking Horse Bidder" will be deemed a Qualified Bidder and the Stalking Horse Bidder's bid will be deemed a Qualified Bid.  For the avoidance of doubt, the DIP Agent, the Pre-Petition Agent, each DIP Lender and each Pre-Petition Lender shall be deemed Qualified Bidders and any bid submitted by the DIP Agent, the Pre-Petition Agent, a DIP Lender or Pre-Petition Lender shall be deemed a Qualified Bid.

If any Bid is determined by the Debtors in consultation with the DIP Agent and Pre-Petition Agent not to be a Qualified Bid, the Debtors shall cause such Bidder to be refunded its Good Faith Deposit without interest thereon on or within three (3) business days after the Bid Deadline.

Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Except as otherwise set forth in a Qualified APA, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid without the written consent of the Debtors after consultation with the DIP Agent and Pre-Petition Agent, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified herein; provided, that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids herein.

**8.      Right to Credit Bid**

For the avoidance of doubt, the DIP Agent, Pre-Petition Agent, any DIP Lender, or any Pre-Petition Lender are deemed allowed "Credit Bidders" and may credit bid all of their respective outstanding amounts under either the DIP Facility or Pre-Petition Claim Documents pursuant to section 363(k).  Any such credit bid may be made collectively on behalf of all DIP Lenders or the Pre-Petition Lender by the DIP Agent or Pre-Petition Agent, or such credit bid may be made individually by any DIP Lender or Pre-Petition Lender for the amount of debt held by such DIP Lender or Pre-Petition Lender.

**9.      Notice Procedures**

a.      Notice of Auction and Sale Hearing

After entry of the Bidding Procedures Order, the Debtors will cause the Notice of Auction and Sale Hearing, substantially in the form attached as Exhibit 2 to the Bidding Procedures Order (the "Sale Notice"), to be served by first-class mail, postage prepaid, facsimile, electronic transmission, or overnight mail upon: (i) all entities known by the Debtors to have expressed an interest in a transaction with respect to the Assets during the past eighteen (18) months, including all Qualified Bidders; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (vi) upon all parties set forth in the Debtor's Master Service List maintained in these cases (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (v) above).

b.      Notice of Assumption and Assignment of Contracts

The Debtors will serve the Assumption and Assignment Notice, substantially in the form attached as Exhibit 3 to the Bidding Procedures Order (the "Assumption and Assignment Notice"), by first-class mail, facsimile, electronic transmission, or overnight mail on (a) each

Counterparty (a "Contract Counterparty") under each potential executory contract or unexpired lease to be assumed and assigned by the Debtors (each an "Assumed and Assigned Contract") and its attorney, if known, in each case on or before **February 22, 2019**, delivered to the last known address available to the Debtors.

The Assumption and Assignment Notice shall set forth the following information: (i) the Contract(s) and/or Lease(s) that may be assumed by the Debtors and assigned to the Successful Bidder(s); (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (iv) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assumed and Assigned Contract, provided, however, that the presence of any Contract or Lease on an Assumption and Assignment Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease.

Any objection to the proposed Cure Amount (a "Cure Objection") must be filed with the Bankruptcy Court on or before **March 15, 2019**.

As soon as practicable after the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court and serve by facsimile, electronic transmission, overnight, on the Contract Counterparty (and its attorney, if known) to each Assumed and Assigned Contract a notice: (a) identifying the Successful Bidder(s); (b) stating which Contract(s) and/or Lease(s) will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder(s)' ability to perform the Debtors' obligations under the applicable Assumed and Assigned Contracts. Any objection to adequate assurance of future performance (a "Adequate Assurance Objection") must be filed with the Bankruptcy Court by 12:00 p.m. on the day before the Sale Hearing.

## 10.   No Qualified Bids

If the Debtors do not receive more than one Qualified Bids with respect to any or all of the Assets, the Debtors shall report the same to the Bankruptcy Court and proceed to the Sale Hearing.

## 11.   Auction

In the event the Debtors receive more than one Qualified Bid to any or all of the Assets, the Bankruptcy Court will conduct the Auction.

The Debtors, in consultation with the DIP Agent and Pre-Petition Agent, shall determine which Qualified Bid shall constitute the starting bid at the Auction (the "*Baseline Bid*"). The Debtors shall notify each Qualified Bidder of the contents of the Baseline Bid. The Baseline Bid shall be subject to higher and better Bids at the Auction.

In making the determination of which Qualified Bid(s) constitutes the Successful Bid(s), the Debtors, in consultation with the DIP Agent and Pre-Petition Agent, shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid(s) to the Debtor's estate, including, among other things: (a) the number, type, and nature of any changes to the Form APA requested by the Qualified Bidder, including the type and amount of Assets sought

and the liabilities of the Debtors to be assumed in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (d) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").[3] The Debtors may evaluate competing bids in a manner that will maximize the aggregate value to the estates.

In the event the Debtors, in consultation with the DIP Agent and Pre-Petition Agent, determines to conduct an Auction, the Auction shall take place on **March 26, 2019** (the "Auction Date"), beginning at 10:00 a.m. (CST), at Bankruptcy Courtroom 2 of Judge Terrance L. Michael, located at 224 South Boulder, Tulsa, Oklahoma 74103, or such later date and time as may be designated by the Debtor (the "Auction") to determine the highest or best bid.  The Auction shall be conducted in a timely fashion according to the following procedures:

      a.     <u>The Debtors Shall Conduct the Auction</u>

      **[This is usually done in the courtroom, presided over by Judge Michael.]**

The United States Bankruptcy Judge shall preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Court shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid(s).

In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder.  Each Qualified Bidder must have at least one individual representative with authority to bind the Qualified Bidder attend the Auction in person.  Only Qualified Bidders and their legal and financial advisors shall be entitled to bid at the Auction.  For the avoidance of doubt, the DIP Agent, DIP Lenders, Pre-Petition Agent and Pre-Petition Lenders, the Office of the United States Trustee, representatives of the Official Committee of Unsecured Creditors, and their respective counsel and advisors are entitled to attend the Auction whether or not they submit a Bid.

      b.     <u>Auction Procedures</u>

A Qualified Bidder wishing to submit a bid at the Auction must bid in an amount that is at least [$50,000] greater than the total consideration contained in the Baseline Bid (the "Minimum Overbid").  The initial minimum overbid has to be at least initial bid plus breakup fee, in addition to $50,000.

Subject to the Minimum Overbid, Qualified Bidders shall submit successive Overbids in increments to be determined by the Debtors in consultation with the DIP Agent and Pre-Petition Agent at the Auction (the "Incremental Bid Amount") for the purchase of the Assets for which it is bidding (each an "Overbid").

---

[3]     For avoidance of doubt, the Bid Assessment Criteria listed herein are not exhaustive and are provided for illustrative purposes only, and the Debtor, in consultation with the DIP Agent and Prepetition Agent, may consider any additional criteria that they consider reasonably relevant to the value of any Qualified Bid.

During the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder which Overbid reflects, in the Debtor's view, the highest or otherwise best Bid for some or all of the Assets.

        c.      <u>Consideration of Overbids</u>

The Debtors reserve the right, in their reasonable business judgment and in consultation with the DIP Agent and Pre-Petition Agent, to adjourn the Auction one or more times to, among other things: facilitate discussions between the Debtors and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

        d.      <u>Closing the Auction</u>

        (i)      The Auction shall continue until there is only one offer that the Debtors determines in consultation with the DIP Agent and Pre-Petition Agent, subject to Bankruptcy Court approval, is the highest and/or best offer for the purchase of the Assets (whether in an aggregate sale to a single buyer or on an asset by asset basis (each a "<u>Successful Bid</u>" and such Bidder, the "<u>Successful Bidder</u>"), at which point, the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid(s). Such acceptance by the Debtors of the Successful Bid(s) is conditioned upon approval by the Court of the Successful Bid(s). The second highest bid, to the extent determined to be acceptable to the Debtors shall be deemed to be the backup bid (the "<u>Backup Successful Bid</u>" and such Bidder, the "<u>Backup Successful Bidder</u>"), provided, however, that the DIP Agent, Pre-Petition Agent and any DIP Lender or Pre-Petition Lender shall not be required to serve as the Backup Successful Bidder in connection with a credit bid.  In the event that the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender makes a determination not to serve as the Backup Successful Bidder (whether before or after submitting any credit bid or other bid), notice shall be provided to the Debtors no later than one (1) business day after the Auction, and the third highest bidder, to the extent determined to be acceptable to the Debtors shall be deemed to be the Backup Successful Bidder.

        (ii)      The identity of the Backup Successful Bidder(s) and the amount and material terms of the Backup Successful Bid(s) shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). The Backup Bidder(s) shall be required to keep its or their Qualified Bid(s) (or if the Backup

Bidder(s) submitted one or more Overbids at the Auction, its final Overbid(s)) open and irrevocable until the closing of the transaction with the Successful Bidder(s).

(iii)    For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their fiduciary duties under applicable law.

(iv)    The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction and any and all such Bids and Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(v)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the definitive asset purchase agreement for the Successful Bid(s) to be filed with the Court.

e.    <u>No Collusion; Good Faith Bona Fide Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

## 12.    Backup Successful Bidder

If a Successful Bidder fails to consummate an approved transaction contemplated by its Successful Bid, the Debtors may select the applicable Backup Successful Bidder as the Successful Bidder, and such Backup Successful Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Successful Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors, and the Debtors specifically reserves the right to seek all available remedies against the defaulting Successful Bidder (or Backup Successful Bidder, if such party shall also breach or fail to perform), as applicable, including with respect to specific performance. In the event that the Backup Successful Bidder fails to consummate an approved Sale, the Assets may be sold pursuant to one or more subsequent sales. For the avoidance of doubt, the DIP Agent, Pre-Petition Agent, and any DIP Lender or Pre-Petition Lender shall not be required to serve as the Backup Successful Bidder in connection with a credit bid. In the event that the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender makes a determination not to serve as the Backup Successful Bidder (whether before or after submitting any credit bid or other bid), the DIP Agent, Pre-Petition Agent, DIP Lender or Pre-Petition Lender, as applicable, shall provide notice to the Debtors no later than one (1) business day after the Auction, and the third highest bidder, to the extent determined to be acceptable to the Debtors shall be deemed to be the Backup Successful Bidder.

## 13.    Highest or Otherwise Best Bid

At all times during the Proposed Sale Process, the Debtors shall retain full discretion and right, in consultation with the DIP Agent and Pre-Petition Agent, to determine which Bid or Bids constitutes the highest or otherwise best offer for the purchase of the Assets (whether in an aggregate sale to a single buyer or on an asset by asset basis), and which bid or bids should be selected as the Successful Bid(s), if any, all subject to final approval by the Bankruptcy Court pursuant to the provisions of Section 363(b) of the Bankruptcy Code.  The Debtors, in consultation with the DIP Agent and Pre-Petition Agent, may adopt rules for the Auction that, in their judgment, will better promote the goals of the Auction and that are not inconsistent in any material respect with any of the other material provisions hereof or of any Bankruptcy Court order.

### 14.    Proceeds

All valid and properly perfected Liens against the Debtors' Assets shall attach to the proceeds of the Sale of such Assets (except to the extent such Liens are assumed under the applicable asset purchase agreement).  In accordance with Final Order (A) Authorizing the Debtors to Use Cash Collateral, (B) Authorizing the Debtors to Obtain Post-Petition Financing, (C) Granting Security Interests and Superpriority Administrative Expense Status to Lenders, (D) Granting Adequate Protection to Pre-Petition Lenders; and (E) Granting Related Relief [Docket No. 118] (the "Final DIP Order"), the proceeds of the sale shall be used to indefeasibly pay in full in cash and completely satisfy the DIP Obligations (as defined in the Final DIP Order) and no order approving the sale shall be entered over the DIP Agent's objections that does not provide for the indefeasible payment in full in cash and completely satisfy the DIP Obligations.

### 15.    Reservation of Rights

The Debtors reserve the right, in consultation with the DIP Agent and Pre-Petition Agent, to modify these Bidding Procedures at or prior to the Auction, including, without limitation, extending the deadlines set forth herein with respect to any or all Potential Bidders, imposing additional terms and conditions with respect to any or all Potential Bidders, adjourning or cancelling the Auction at or prior to the Auction and/or adjourning the Sale Hearing.

### 16.    Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Confidentiality Agreements, as applicable.

### 17.    Sale Hearing

A hearing to consider approval of the Sale pursuant to the Sale Motion of all or substantially all of the Assets to the Successful Bidder(s) (the "Sale Hearing") is presently scheduled to take place on [_____] at __:__ [a.m./p.m.] (Central Time), or as soon thereafter as counsel may be heard, before the Honorable Terrence L. Michael in Courtroom 2, 1st Floor, 224 South Boulder Avenue, Tulsa, Oklahoma.

The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval. Following the approval of the Successful Bid(s) at the Sale Hearing, the Debtors will be authorized to take any and all actions necessary and appropriate to complete and implement the Sale(s) contemplated by the Successful Bid(s), including, without limitation, seeking entry of one or more orders approving such Sale(s).

### 18.  Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder(s) nor the Backup Successful Bidder(s) shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. The Good Faith Deposit of the Backup Successful Bidder(s), if any, shall be returned to the Backup Successful Bidder on the date that is the earlier of 72 hours after (i) the closing of the transaction with the Successful Bidder for the property bid upon by the Backups Successful Bidder(s), and (ii) thirty (30) days after the date of entry of the Sale Order. If the Successful Bidder timely closes the winning transaction, the Good Faith Deposit shall be credited towards the purchase price.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, and/or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Successful Bidder without the need for an additional hearing or order of the Court. Upon the return of the Good Faith Deposits, their respective owners shall not receive any thereon.

### 19.  No Modification of Bidding Procedures

Except as otherwise provided herein, these Bidding Procedures may not be modified except with the Debtors' consent in consultation with DIP Agent and Pre-Petition Agent.

**<u>Exhibit 2</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>NICHOLS BROTHERS, INC.,<br>an Oklahoma corporation, *et al.*,[3]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11123-M<br><br>Jointly Administered |

**NOTICE OF (I) SOLICITATION OF BIDS; (II) BIDDING PROCEDURES;
(III) OBJECTION DEADLINE; (IV) AUCTION; (V) SALE HEARING
AND (VI) RELATED RELIEF AND DATES**

**TO ALL CREDITORS AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on June 1, 2018, Nichols Brothers, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned Chapter 11 case (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on December 26, 2018 the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004 and 6006 for Order To Authorize and Approve the (I) Bidding Procedures, (III) Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (IV) Notices Relating to the Sale of the Debtors' Assets and the Assumption and Assignment of Executory Contracts, (V) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Motion") with the clerk of the Court seeking, among other things, entry of an order (the "Bidding Procedures Order") authorizing and approving (i) the Bidding Procedures (attached as Exhibit 1 to the Bidding Procedures Order) for the Sale of the Assets, (ii) the date and time of the auction (the "Auction") and the sale hearing (the "Sale Hearing") in accordance with the Bidding Procedures, (iii) the form and manner of notice of respective dates, times, and places in connection herewith, (iv) approving procedures for the assumption and assignment of designated executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), and (vi) granting related relief, by which the Debtors will solicit and select the highest or otherwise best offer for the Sale of Assets. Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bidding Procedures Motion and/or the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that on February 28, 2019, the Debtors filed the *Debtors Motion to Sell Substantially all of their Assets* [Docket No. ___] (the "Sale Motion") seeking

---

[3] The Debtors in these jointly administered cases are: NICHOLS BROTHERS, INC., Case No. 18-11123-TLM; NBI PROPERTIES, INC., Case No. 18-11124-M; N B I SERVICES, INC., Case No. 18-11125-M; LADDER COMPANIES, INC., Case No. 18-11126-M; RED WATER RESOURCES, INC., Case No. 18-11127-M; CANO PETRO OF NEW MEXICO, INC., Case No. 18-11128-M; and W.O. OPERATING COMPANY, LTD., Case No. 18-11129-M.

approval of the sale (the "Sale") of all the Debtors' assets (the "Assets"), including its oil and gas assets, free and clear of all claims, liens, and encumbrances and other interests pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on _____, 2019, the Court entered the Bidding Procedures Order [Docket No. ___]. The Debtors are therefore soliciting offers for the purchase of its Assets as set forth in the Bidding Procedures. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, in the event that the Debtors timely receives two or more Qualified Bids, the Debtors will conduct an auction (the "Auction"), which shall be held in the United States Bankruptcy Court for the Northern District of Oklahoma, before the Honorable Terrence L. Michael, located at 224 South Boulder Avenue, Courtroom No. 2, Tulsa, Oklahoma 74103, on **March 26, 2019, at _____ _.m. (Central Time)** or such later date and time as selected by the Debtors and authorized by the Bankruptcy Court. The Auction (Sale Hearing) shall be conducted in a timely fashion according to the Bidding Procedures. Only Qualified Bidders with Qualified Bids, as determined in accordance with the Bidding Procedures, shall be entitled to make any subsequent bids at the Auction. A Qualified Bidder that desires to make a bid shall deliver a written or electronic copy of its bid to the parties identified in the Bidding Procedures so as to be received prior to **March 21, 2019** (the "Bid Deadline") and otherwise comply with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that if no Qualified Bid is received by the Debtors by the Bid Deadline, the Debtors shall not hold an Auction (Sale Hearing) and shall seek approval of a Sale of the Assets to one or more of the DIP Lenders and Pre-Petition Lenders pursuant to a credit bid at the Sale Hearing pursuant to the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that the Successful Bid will be subject to approval by the Court. The Auction (Sale Hearing) to consider approval of the Sale Motion and of the Sale of the Assets to the Successful Bidder is presently scheduled to take place on **March 26, 2019, at ___:____ _.m. (Central Time)**, or as soon thereafter as counsel may be heard, before The Honorable Judge Terrence L. Michael, United States Bankruptcy Judge in Courtroom #2, 1st Floor, 224 South Boulder Avenue, Tulsa, Oklahoma 74103, or before any other judge who may be sitting in his place and stead. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections, if any, to the Sale of the Assets, or any relief requested in the Sale Motion other than the relief granted by this Court in the Bidding Procedures Order **must** be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; and (d) filed with the Clerk of the Court by no later than **5:00 p.m. (Central Time) on March 15, 2019** (the "Objection Deadline"). Each objection shall state the legal and factual basis of such objection.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PERSON OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE MOTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE ASSET PURCHASE AGREEMENT RELATED THERETO.  IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT CERTAIN OF THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

**PLEASE TAKE FURTHER NOTICE** that if any person or entity asserts that any property or right (including with respect to an Assumed and Assigned Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the applicable purchase and sale agreement on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights (a "Preferential Rights"), then such person or entity must file a notice with the Court with all supporting documentation (a "Rights Notice") on or before the Bid Deadline, which is **March 21, 2019**.  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

**PLEASE TAKE FURTHER NOTICE** that any person or entity failing to timely file a Rights Notice will be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' Assets, including, from asserting any alleged Preferential Rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' Assets, and (b) deemed to consent to and approve the transfer, sale, assumption, and/or assignment of the Debtors' Assets free and clear of all liens, encumbrances, claims and other interests.

**PLEASE TAKE FURTHER NOTICE** that if any person or entity timely files a Rights Notice, the Debtors will have the opportunity to object to any alleged Preferential Rights asserted by filing an objection to such Rights Notice at any time prior to the Sale Hearing.  Upon the filing of such objection to the Rights Notice, any rights asserted are deemed to be disputed and the Debtors is entitled to assert a bona fide dispute exists as to such rights asserted.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bidding Procedures Order, the Bidding Procedures, and the Form APA, are available for a fee via PACER by visiting http://ecf.oknb.uscourts.gov, or by request to the undersigned counsel.

*[Remainder of Page Intentionally left Blank]*

Dated:   January____ , 2019                Respectfully submitted,

                                           MCDONALD & METCALF, LLP

                                           By: _____
                                                Gary M. McDonald, OBA No. 5960
                                                Chad J. Kutmas, OBA No. 19505
                                                Mary E. Kindelt, OBA No. 21728
                                                MCDONALD & METCALF, LLP
                                                First Place Tower
                                                15 E. Fifth Street, Suite 1400
                                                Tulsa, Oklahoma 74103
                                                Telephone: (918) 430-3700
                                                Facsimile:  (918) 430-3770
                                                gmcdonald@mmmsk.com
                                                ckutmas@mmmsk.com
                                                mkindelt@mmmsk.com

                                           *Counsel for the Debtors and Debtors in Possession*

**Exhibit 3**

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>NICHOLS BROTHERS, INC.,<br>an Oklahoma corporation, *et al.*,[4]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11123-M<br><br>Jointly Administered |

## NOTICE OF PROPOSED (I) ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS AND (II) REJECTION OF CONTRACTS

**TO ALL CREDITORS AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on June 1, 2018, Nichols Brothers, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned Chapter 11 case (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on December 26, 2018 the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004 and 6006 for Order To Authorize and Approve the (I) Bidding Procedures, (III) Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (IV) Notices Relating to the Sale of the Debtors' Assets and the Assumption and Assignment of Executory Contracts, (V) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Motion") with the clerk of the Court seeking, among other things, entry of an order (the "Bidding Procedures Order") authorizing and approving (i) the Bidding Procedures (attached as Exhibit 1 to the Bidding Procedures Order) for the Sale of the Assets, (ii) the date and time of the auction (the "Auction") and the sale hearing (the "Sale Hearing") in accordance with the Bidding Procedures, (iii) the form and manner of notice of respective dates, times, and places in connection herewith, (iv) approving procedures for the assumption and assignment of designated executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), and (vi) granting related relief, by which the Debtors will solicit and select the highest or otherwise best offer for the Sale of Assets. Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bidding Procedures Motion and/or the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that on February 28, 2019, the Debtors filed the *Debtors Motion to Sell Substantially all of their Assets* [Docket No. ___] (the "Sale Motion") seeking

---

[4] The Debtors in these jointly administered cases are: NICHOLS BROTHERS, INC., Case No. 18-11123-TLM; NBI PROPERTIES, INC., Case No. 18-11124-M; N B I SERVICES, INC., Case No. 18-11125-M; LADDER COMPANIES, INC., Case No. 18-11126-M; RED WATER RESOURCES, INC., Case No. 18-11127-M; CANO PETRO OF NEW MEXICO, INC., Case No. 18-11128-M; and W.O. OPERATING COMPANY, LTD., Case No. 18-11129-M.

approval of the sale (the "Sale") of all the Debtors' assets (the "Assets"), including its oil and gas assets, free and clear of all claims, liens, and encumbrances and other interests pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on _____, 2019, the Court entered the Bidding Procedures Order [Docket No. ___].  In accordance therewith, the Debtors are soliciting offers for the purchase of its Assets as set forth in the Bidding Procedures.  The Bidding Procedures (and Form APA referenced therein) and Sale Motion contemplate, and the Sale Order, if approved, shall authorize the assumption and assignment of the Designated Contracts set forth on this Assumption and Assignment Notice to the Successful Bidder (collectively, the "Assumed and Assigned Contracts").

<u>**YOU ARE RECEIVING THIS NOTICE BECAUSE**</u>
<u>**YOU ARE A PARTY TO ONE OR MORE OF THE DESIGNATED CONTRACTS ON**</u>
<u>**THIS ASSUMPTION AND ASSIGNMENT NOTICE**</u>

<u>**DESIGNATED CONTRACTS**</u>

Attached hereto as **Exhibit A** is a schedule of all Designated Contracts the Debtors propose to assume and assign to the Successful Bidder listing the counterparties to such contracts (the "Contract Counterparties") and the amount, if any, proposed to be paid to cure any monetary defaults under the Designated Contracts pursuant to Bankruptcy Code section 365 (the "Cure Amount").  The Successful Bidder reserves the right to revise this list in accordance with the applicable purchase and sale agreement and Bidding Procedures at any time prior to the closing on the Sale of the Assets.

To the extent that any Designated Contract is determined by an order of the Court, or as between the Debtors and the applicable Contract Counterparty, not to be an executory contract under and for purposes of Bankruptcy Code section 365, the Debtors shall instead sell, assign and transfer to the Successful Bidder all of the Debtors' right, title and interest in, to and under such Designated Contracts pursuant to Bankruptcy Code section 363 and 365.  Prior to any such sale and transfer of a Designated Contract or as soon thereafter as practicable, the Debtors shall cure any monetary defaults or pay other amounts due under such Designated Contract which are capable of being cured or paid as if such  Designated Contract had been subject to Bankruptcy Code section 365.

**IF YOU AGREE WITH THE PROPOSED CURE AMOUNT LISTED IN EXHIBIT A WITH RESPECT TO YOUR DESIGNATED CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.**

**IF YOU DISAGREE WITH THE PROPOSED CURE AMOUNT LISTED IN EXHIBIT A WITH RESPECT TO YOUR CONTRACT(S), YOU MAY OBJECT TO THE PROPOSED CURE AMOUNT NO LATER THAN MARCH 15, 2019 AT 5:00 P.M. (CENTRAL TIME).**

Objections to the assumption and assignment any of the Designated Contracts (including the Cure Amount listed on Exhibit A) (an "Cure Objection") must: (i) be made in writing and filed with the Clerk of the Court, by no later than **March 15, 2019 at 5:00 p.m. (Central time)** (the "Cure Objection Deadline"); (ii) state the basis of such objection with supporting documentation

and specificity, including, without limitation, a specific default in the Designated Contract, the precise Cure Amount alleged to be due to such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number and email address); and (iii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules.

As soon as practicable after the conclusion of the Auction (Sale Hearing), the Debtors shall file with the Bankruptcy Court and serve by facsimile, electronic transmission, overnight, the Contract Counterparty (and its attorney, if known) to each Assumed and Assigned Contract a notice: (a) identifying the Successful Bidder(s); (b) stating which Contract(s) and/or Lease(s) will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder(s)' ability to perform the Debtors' obligations under the applicable Assumed and Assigned Contracts. Any objection to adequate assurance of future performance (a "Adequate Assurance Objection") must be filed with the Bankruptcy Court by 12:00 p.m. on the day before the Sale Hearing.

If you file an objection satisfying the requirements herein, the Debtors and/or Successful Bidder will confer with you in good faith to attempt to resolve any such objection without Court intervention. If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Court shall resolve such objection at a hearing to be held prior to the Sale Hearing, or at a hearing on such other date as the Court may designate.

**IF YOU FAIL TO TIMELY FILE AN OBJECTION AS PROVIDED HEREIN (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY OBJECTION AND CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OR SALE AND TRANSFER OF SUCH TRANSFERRED CONTRACT ON THE TERMS SET FORTH IN THIS ASSIGNMENT NOTICE AND THE APPLICABLE PURCHASE AND SALE AGREEMENT AND (II) YOU WILL BE BARRED AND ESTOPPED FOREVER FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS OR THE SUCCESSFUL BIDDER THAT ANY ADDITIONAL CURE COSTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION AND ASSIGNMENT OR SALE AND TRANSFER MUST BE SATISFIED, UNDER SUCH TRANSFERRED CONTRACT. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT CERTAIN OF THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

The Debtors' assumption and assignment or sale and transfer of a Designated Contracts is subject to approval by the Court, and consummation of the closing of the Sale. If there is no closing, the Designated Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

The inclusion of any document on the list of Designated Contracts shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder that such document is, in fact, an executory contract within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

Any Cure Objection or Adequate Assurance Objection shall not constitute an objection to any of the other relief requested in the Motion to be approved by the Sale Order (*e.g.*, the Sale of

the Assets by the Debtors to the Successful Bidder free and clear of claims, liens and encumbrances other than those assumed by the Successful Bidder).  Parties wishing to object to the other relief requested in the Motion (excluding the Bidding Procedures) must timely file a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Sale Procedures Order.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas and/or in accordance with the Sale Procedures Order.  Parties in interest are encouraged to monitor the electronic court docket.

This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedure Order and the Assumption and Assignment Procedures set forth in the Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Copies of the Sale Motion, the Bidding Procedures Order, the Bidding Procedures, and the Form APA, are available for a fee via PACER by visiting http://ecf.oknb.uscourts.gov or request to the undersigned counsel.

*[Remainder of Page Intentionally left Blank]*

Dated:    January____ , 2019                    Respectfully submitted,

                                                MCDONALD & METCALF, LLP

                                                By:    _____
                                                        Gary M. McDonald, OBA No. 5960
                                                        Chad J. Kutmas, OBA No. 19505
                                                        Mary E. Kindelt, OBA No. 21728
                                                        MCDONALD & METCALF, LLP
                                                        First Place Tower
                                                        15 E. Fifth Street, Suite 1400
                                                        Tulsa, Oklahoma 74103
                                                        Telephone: (918) 430-3700
                                                        Facsimile:  (918) 430-3770
                                                        gmcdonald@mmmsk.com
                                                        ckutmas@mmmsk.com
                                                        mkindelt@mmmsk.com

                                                *Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A TO ASSUMPTION AND ASSIGNMENT NOTICE

### Designated Contracts

| No. | Contract Party | Contract Counterparty | Contract Title | Date of Entry | Cure Cost |
|-----|---------------|----------------------|----------------|---------------|-----------|
| 1 | [X] | [X] | [X] | [X] | $[X] |